De L'Ogier Park Development Corporation *et al.*, Plaintiffs-Appellants, *v.* First Federal Savings and Loan Association of Berwyn *et al.*, Defendants-Appellees.

(No. 54779;

First District—July 13, 1972.

Burditt, Calkins & Wiley, of Chicago, for appellants.

Zachary D. Ford, of Glenview, and Stephen M. Herman, James R. Mitchell, H. W. Duff, S. S. Dixon, and Robert J. Sharfman, all of Chicago, for appellees.

Mr. PRESIDING JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from an order of the trial court sustaining the motions of the various defendants to strike and dismiss the plaintiff's complaint. We affirm.

The facts as set out in the plaintiff's complaint are as follows: The De L'Ogier Park Development Corporation (hereinafter referred to as De L'Ogier) and the J. Edwards Construction Company were solely owned by John E. Emerson. In August, 1959, De L'Ogier began to develop a subdivision on land owned by Emerson located in Glenview, Illinois. The subdivision was to be known as De L'Ogier Park. Actual construction of the homes in the subdivision was to be done by the Edwards Company.

Prior to commencing the construction of homes, De L'Ogier obtained three construction loans totaling $105,000 from First Federal Savings and Loan Association of Berwyn, Illinois. These loans were secured by first mortgages on lots 12, 14 and 20 of the De L'Ogier subdivision.

In July, 1969, plaintiffs Emerson and De L'Ogier filed suit against the various defendants charging them with a conspiracy to destroy the plaintiffs' business. The defendants named in the complaint can be briefly identified as follows: a) First Federal Savings and Loan Association is a corporation located in Berwyn, Illinois. b) George W. Hermann is a mortgage broker in Chicago, Illinois. He is not related to defendants Edward or Stephen Herman. c) George W. Foose was the Building and Zoning Director of the Village of Glenview, Illinois. d) Edward M. Herman is an attorney who was counsel for First Federal Savings and Loan. e) Stephen M. Herman is the son of Edward Herman and is an attorney. He also was a counsel for First Federal Savings and Loan. He also acted as special prosecutor for the Village of Glenview.

The plaintiffs' complaint alleges various acts committed by the defendants pursuant to the conspiracy, the relevant parts of which are as follows:

1. That on or about August 1, 1962, the defendants entered a con-

spiracy to destroy plaintiffs' business by preventing them from constructing and selling homes and by forcing De L'Ogier into foreclosure so that defendants, particularly George Hermann, could obtain the mortgaged property.

2. That in the fall of 1962, defendant George Hermann, enlisted the aid of defendant Foose in obstructing plaintiffs' business, and as a reward for his aid Foose was given a 100 per cent mortgage on a home he purchased in Glenview.

3. That in furtherance of the conspiracy, the following illegal and unlawful acts were committed by defendants, particularly defendant George Foose:

a) During 1963 and 1964 Foose charged plaintiffs with 29 building code violations including the issuance of ten warrants for arrest of plaintiff Emerson;

b) A contract for the sale of plaintiffs' first constructed home on lot 12 of the subdivision was entered with prospective buyers on November 2, 1962. Thereafter, Foose issued a stop-work order charging a violation of the building code. The violation was allegedly that the garage was 6¼" over the back-set line. Legal proceedings were instituted by Foose and later dismissed because he was unable to prove the violation.

c) On November 10, 1962, Foose entered the De L'Ogier subdivision with police officers and arbitrarily stopped all construction work.

d) Defendant Foose prepared a three page report seeking revocation of the J. Edwards Company contractor's license and submitted it to the Glenview Village Manager. Subsequently, Foose with the assistance of defendant Stephen Herman, supplemented the report. No action was taken on either occasion. The purpose of the reports was allegedly to embarrass plaintiffs and destroy their business.

e) On April 16, 1964, plaintiff Emerson was arrested by Glenview police at defendant Foose's direction and incarcerated for a period of several hours. The arrest warrants involved failure of plaintiffs to obtain occupancy inspections on two houses that had been occupied for a number of months. The occupants had allegedly notified the Village of Glenview prior to the time they moved in. Two other arrest warrants issued involved failure to have prepouring concrete inspections on pourings which had been made some seven to ten months earlier.

f) On September 30, 1963, defendant First Federal filed foreclosure actions on lots 12, 14 and 20. During these proceedings plaintiffs entered a contract with prospective buyers for sale of one of its houses which sale would allegedly have given plaintiffs the necessary funds to get an extension on the mortgage loan. First Federal denied all requests for an

extension, and Foose on August 3, 1964, placed a stop-work order on the house, and on August 11, 1964, placed stop-work orders on three additional houses under construction.

g) On September 30, 1963, First Federal filed foreclosure actions on mortgages it held covering lots 7, 14 and 20 of plaintiffs' subdivision. First Federal allegedy refused to honor payout requests executed by the J. Edwards Construction Company which they had previously honored on many occasions. These requests would then be endorsed over and submitted to First Federal as payments for plaintiff De L'Ogier.

h) That defendants Stephen Herman and Edward Herman represented First Federal in the foreclosure actions. At approximately the same time, Stephen Herman was appointed special prosecutor for the Village of Glenview in which position he prosecuted plaintiffs for the alleged building code violations.

i) On October 15, 1963, plaintiff De L'Ogier entered a contract of sale for a house on lot 14. Allegedly to prevent sale, defendant Stephen Herman, acting as attorney for First Federal, refused to forward necessary papers to the lending institution which was financing the sale. Plaintiff De L'Ogier had to take court action to get the papers forwarded.

j) After foreclosure proceedings had been instituted by defendant First Federal on lots 12, 14 and 20, defendants George Hermann and Edward Herman, together with other bank officers, refused to agree to an extension of time on the loans. On August 12, 1964, lot 20 was purchased by George Hermann at a foreclosure sale for an amount alleged to be considerably less than its market value.

4. Defendant George Hermann was subsequently indicted and prosecuted on a plea of *nolo contendere* for failure to report as income the 10 per cent discount he received on his loans to plaintiff De L'Ogier which were secured by second mortgages.

5. As a result of defendants' conspiracy, plaintiff De L'Ogier's business reputation and credit rating were allegedly destroyed. Further, plaintiff Emerson's business career was also allegedly destroyed.

The various defendants filed motions to strike and dismiss the plaintiff's complaint on the grounds that the complaint failed to state a cause of action and also that it was barred by the statute of limitations and by the doctrine of *res judicata*. The trial judge issued an order dismissing the complaint, and it is from this order that the plaintiffs appeal.

■■ A civil conspiracy giving rise to a cause of action for damages has been defined as a combination of two or more persons to accomplish by concerted action either i) a lawful purpose by unlawful means, or

ii) an unlawful purpose by lawful means. See I.L.P. Conspiracy, § 2; *Kovar v. Bremer* (1935), 281 Ill.App. 505.

It is clear from an examinatinon of plaintiffs' complaint and the brief filed by the plaintiffs in this Court that the thrust of plaintiffs' complaint seeks to establish a conspiracy to accomplish "an unlawful purpose by lawful means." The plaintiffs' principal argument, as set out in their brief, is that "the defendants' conspiracy was directed toward the accomplishment of an unlawful goal: the wilful and intentional destruction of another's business." Further explanation is given by the plaintiffs in both their brief and complaint where they aver that "the purpose of the defendants' conspiracy was to '* * * force plaintiff De L'Ogier into foreclosure so that the defendants and in particular George W. Hermann, could obtain said property.'" The plaintiffs make an alternative argument that certain of defendants' acts are "illegal and unlawful" and hence there is also a conspiracy to accomplish "a lawful purpose by unlawful means." We will consider each argument in turn.

The plaintiffs have cited a number of cases to support the claim that their complaint stated a cause of action because of the averment that the unlawful goal of defendants was to force them into foreclosure and thereby destroy plaintiffs' business. The cases cited by plaintiffs are *Purington v. Hinchliff* (1905), 219 Ill. 159, 76 N.E. 47; *Carlson v. Carpenter Contractors' Association* (1922), 305 Ill. 331, 137 N.E. 222; *Wilborn v. Heniff* (1968), 95 Ill.App.2d 155, 237 N.E.2d 781; *Monroe College of Optometry v. Goodman* (1947), 332 Ill.App. 78, 74 N.E.2d 153; *Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924. An examination of these cases simply does not bear out the reliance placed in them by the plaintiffs. Each of the cited cases involved the performance or allegation of clearly unlawful acts in furtherance of the conspiracy. The *Purington, Doremus* and *Carlson* cases involved illegal group boycotts. The *Wilborn* case involved the unlawful revelation of the plaintiff's trade secrets. In *Monroe,* the only case involving an appeal from a motion to dismiss, the plaintiff's complaint alleged specific instances of libelous statements published by the defendants.

■■ We think that the fact that one is forced out of business is, standing by itself, not *per se* unlawful. The most obvious example of such a result being non-actionable legally would be where one is forced out of business due to lawful competition from his competitors. The case law, as cited by plaintiffs, establishes that in these instances where the complaint alleges a conspiracy to interfere with or destroy the plaintiffs' business, the courts will, generalizations aside, sustain the cause of action only where the acts in furtherance of the business-destroying goal are

unlawful. (See *Purington, Carlson, Wilborn, Doremus, Monroe College of Optometry, supra.*) In the case of *Kovar v. Bremer* (1935), 281 Ill.App. 505, 507-8, this Court said that in situations where it is averred that the goal of the conspiracy is an interference with one's lawful business, it was not necessary to allege that the defendants' acts were unlawful, *i.e.* "In such situations, same [allegations of unlawful acts] was not necessary. The averment that they conspired to destroy appellant's business was a sufficient allegation that the combination was for an illegal purpose, and that the acts done or words spoken in pursuance thereof, were because thereof, and of themselves, illegal * * *." However, an examination of the facts of that case establish that the acts allegedly committed in furtherance of the conspiracy were the unlawful acts of uttering slander against the plaintiff. Thus, the case is consistent with those cited previously.

It becomes necessary, therefore, to inquire as to whether defendant perpretrated any "illegal acts" in furtherance of the alleged conspiracy to destroy the plaintiffs' business. Plaintiffs' complaint alleges that in fact defendants did perpetrate certain "illegal and unlawful acts." We must, therefore, examine the sufficiency of these allegations. We note that in so doing we will also be responding to the plaintiffs' alternative argument in this appeal that the defendants' "illegal and unlawful acts" make their conspiracy one to accomplish "a lawful goal by unlawful means."

The plaintiffs' brief sets out specific alleged unlawful acts as follows: 1) The use of one's public office to arrest and incarcerate another for the sole purpose of harassing and embarrassing that person; 2) The use of one's public office to capriciously stop construction on homes as soon as said homes are the object of a contract of sale in order to frustrate the closing of that sale; 3) The conspiratorial refusal to forward documents necessary for the closing of the sale of one of plaintiffs' homes so that the sale will be thwarted.

■■■ We do not think these allegations are sufficient to sustain the complaint. We think the plaintiff has failed to distinguish between the motives behind an act and the legality of the act itself. The defendants argue effectively that regardless of a public officer's motives, it is not unlawful for him to have a person arrested or a stop-work order issued if these actions are legally justified. There is nothing in the plaintiffs' complaint from which it can be inferred that such actions in the instant case were not justified. Where one exercises a legal right only, the motive which actuates him is immaterial. (See *Dean v. Kirkland* (1939), 301 Ill.App. 495, 23 N.E.2d 180.) As for the refusal to forward the documents, there is simply nothing on the face of that allegation to establish how or why such refusal was unlawful.

Aside from the allegations above mentioned of specific unlawful acts, the plaintiffs make a general characterization of all of defendants' alleged acts as being "illegal and unlawful." These allegations, if they can be considered such, are obviously even less sufficient than the previously discussed specific acts. Aside from lacking the requisite specificity, we must note that at no point in the complaint did the plaintiffs allege that in fact they were not in violation of the Glenview building code on any of the matters for which they were prosecuted. Nor do they allege at any point that the loans foreclosed were not in fact delinquent. There is no allegation that the stop-work orders issued were not in fact justified. In sum, we think plaintiffs' allegations of illegal acts by defendants are simply insufficient to sustain a cause of action for conspiracy to interfere with or destroy another's business.

Finally, we must observe that in virtually all of the cases cited involving alleged conspiracies to interfere with or destroy one's business, the courts talk in terms of the conduct of one's *lawful* business. In the *Purington* case, *supra*, the Court said at page 166:

"No person or combination of persons can legally, by direct or indirect means, obstruct or interfere with another in the conduct of his lawful business, and any loss wilfully caused by such interference will give the party injured a right of action for all damages sustained."

In the case at bar, the plaintiffs' allegations are simply unclear as to whether the acts alleged interfered with the *lawful* conduct of business. The bulk of the overt acts alleged to have been committed by the defendants is the issuance of stop-work orders and arrest warrants because of alleged building code violations by plaintiffs and the institution of foreclosure proceedings because of delinquent loans. Allowing loan payments to become delinquent and engaging in violations of local building codes cannot be considered the lawful conduct of business such as to make any efforts to remedy those violations actionable as an unlawful conspiracy. In the absence of clear allegations by the plaintiffs, this Court cannot assume that the loans were not delinquent or the building code violations non-existent.

Judgment affirmed.

DEMPSEY and McNAMARA, JJ., concur.