LAWRENCE BAU, Plaintiff-Appellant, *v.* JOHN SOBUT *et al.,* Defendants-Appellees.

First District (2nd Division)    No. 76-262

Opinion filed June 28, 1977.

Theodore Birndorf, of Walter, Zelden, Birndorf & Goldberg, of Chicago, for appellant.

Morton A. Gordon, of Chicago, for appellees John Sobut & Walter Sobut.

Peter D. Oosterbaan and Richard E. Burke, both of Blue Island, for appellee Heritage Bank.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from a directed finding entered by the circuit court of Cook County in favor of defendants, John Sobut, Financial Management Associates, Inc., *et al.*, and against plaintiff, Lawrence Bau. The directed finding, entered at the close of the plaintiff's case, stated that there was no just reason to delay its enforcement or appeal.

Plaintiff, a licensed real estate broker, brought a multicount action against defendants essentially alleging (1) plaintiff's right to a brokerage commission in the amount of $58,000 pursuant to an exclusive listing and (2) defendants' intentional acts causing plaintiff to be deprived of his commission. This second, major allegation was phrased in terms of a civil conspiracy.

Plaintiff alleged that he orally contracted with defendants John and Walter Sobut for plaintiff's exclusive listing for sale of a tract of real estate, owned by the Sobuts and located at the southwest corner of 95th Street and Southwest Highway. The Sobuts had allegedly made this agreement through their agent and attorney, George Shapiro. Plaintiff claimed that Shapiro, now deceased, had represented to plaintiff that Shapiro was duly authorized to enter into an agreement on behalf of the Sobuts. Plaintiff's commission was, allegedly, to be whatever sum of money was received in excess of $667,000.

Plaintiff further alleged that he offered the real estate to defendants Pullman Banking Group and Financial Management Associates, Inc., for $725,000. This offer was made to James D'Arcy, who plaintiff characterizes as the agent of Pullman Banking Group and Financial Management Associates, Inc. Plaintiff contends that Pullman Banking Group and Financial Management Associates, Inc., were ready, willing and able to buy, thus entitling plaintiff to a brokerage commission of $58,000.

This sale was never consummated. Plaintiff alleges that subsequently the Sobuts entered into contracts of sale and lease with defendant Financial Management Associates, Inc. The sale of a portion of the Sobuts' property and the lease of the remainder thereof was completed. Plaintiff alleges that as the "procuring cause" of the completed transaction plaintiff is entitled to a commission in the sum of $58,000.

These allegations do not end plaintiff's contentions. The remaining counts of plaintiff's complaint alleged (1) tortious action by defendants, depriving plaintiff of his commission, (2) a civil conspiracy by defendants, (3) the liability of the estate of George Shapiro if Shapiro had no authority to act as agent for the Sobuts and (4) the liability of the estate of George Shapiro due to Shapiro's breach of warranty of authority if, in fact, Shapiro was the agent for the Sobuts.

A bench trial commenced November 12, 1975. On November 13, 1975, pursuant to an order of the circuit court of Cook County, the action against the estate of George Shapiro was dismissed with prejudice. On November 24, 1975, plaintiff filed an amendment to the fourth amended complaint at law in which plaintiff added count VI alleging conspiratorial conduct and prayed for actual damages in the sum of $18,650 and for punitive damages in the sum of $50,000. It was also on November 24, 1975, that the circuit court sustained defendants' motion for a directed finding. It is from this directed finding that plaintiff appeals.

■■ Section 64(3) of the Civil Practice Act (Ill. Rev. Stat. (1975), ch. 110, par. 64(3)) specifically requires the trial court sitting without a jury to weigh the evidence when ruling on defendant's motion for judgment at the close of the plaintiff's case and enter a judgment or decree dismissing the action if the ruling is favorable to defendant. Thus, in ruling on a motion at the close of plaintiff's evidence, a trial court sitting without a jury should *not* consider the evidence in the light most favorable to plaintiff, as it must in a jury case. Rather, in accordance with the terms of the statute, the court must weigh all the evidence, which necessarily requires the court to draw reasonable inferences therefrom, determine the credibility of witnesses, and then not simply decide whether plaintiff has made out a prima facie case, but make a final determination and enter judgment for defendant if plaintiff has not met his burden of proof by a preponderance of the evidence. (*Hawthorn Mellody Farms Dairy, Inc. v. Rosenberg* (1973), 11 Ill. App. 3d 739, 297 N.E.2d 649.) Moreover, a reviewing court should not reverse the trial court's ruling on such a motion unless the ruling is manifestly erroneous. *Bilyeu v. Plant* (1966), 75 Ill. App. 2d 109, 220 N.E.2d 513.

James D'Arcy, a management financial consultant, Angie Porter, an acquaintance and client of plaintiff, Walter Sobut, one of the owners of the real estate (testifying under Ill. Rev. Stat. (1975), ch. 110, par. 60), and Robert Bley, a real estate broker, testified on behalf of plaintiff. Plaintiff also testified in his own behalf. Through these witnesses plaintiff hoped to prove the existence of an exclusive listing contract in his favor and plaintiff's procurement of a buyer ready, willing and able to purchase the realty.

James D'Arcy, a management financial consultant, testified that the Pullman Banking Group, through its vice-president of real estate, Joe Getto, asked D'Arcy if D'Arcy could get an exclusive on the real estate for 90 days. D'Arcy responded that he would attempt to do so. Getto told D'Arcy that D'Arcy would be relaying offers and counteroffers and would receive a finder's fee if negotiations were successful. On cross-examination, D'Arcy stated that he never saw an exclusive contract with

any real estate broker. He further testified that he never had any authority to contract for the Pullman Bank, never offered, on behalf of the bank, to purchase the property for $725,000 and never saw a contract for the purchase of the Sobuts' property.

Angie Porter, a client of plaintiff, testified on behalf of plaintiff. She testified as to having a three-way telephone conversation with plaintiff and Walter Sobut. During this conversation plaintiff explained to Sobut that plaintiff needed an "exclusive," that he was a broker and that he had a purchaser. Porter further testified that Mr. Sobut was enthusiastic but gave no "exclusive" to plaintiff at that time. Instead, Sobut told plaintiff to talk to Sobut's attorney, Mr. Shapiro, in order to determine the necessity of obtaining any documents. Porter testified that a price of about $660,000 was discussed but that there was no discussion of any other details.

Porter then testified to a subsequent three-way telephone conversation between Sobut, Shapiro and Porter. She testified that Sobut stated he would go along with the "exclusive" because buyers had been found. Shapiro then stated that he would take care of any of Mr. Sobut's details.

Walter Sobut, one of the owners of the real estate, testified pursuant to section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). Sobut stated that he did have telephone conversations with plaintiff and with Sobut's attorney, George Shapiro. Sobut testified that he placed in Shapiro's hands the decision regarding whether plaintiff should be given an "exclusive." However, Sobut testified that he did not authorize Shapiro to give plaintiff an exclusive sales agency or listing agreement. He further stated that plaintiff never told him that plaintiff had a listing agreement from Shapiro or to what commission plaintiff would be entitled. Sobut never urged plaintiff to find a buyer at approximately $600,000 but did state, "I'll take it," when told there was a buyer.

Robert Bley, a real estate broker, testified on behalf of plaintiff concerning brokerage commissions and situations in which a broker would be entitled to a commission. He stated that if a broker was retained to negotiate a sale of property and the broker found a purchaser who subsequently entered into a lease for all or part of the property, the broker would be entitled to a commission. On cross-examination, Bley admitted that an exclusive to sell does not mean an exclusive to lease.

Plaintiff testified in his own behalf. He stated that he had called Sobut and told him that plaintiff knew that Sobut was interested in selling and listing his realty for sale. Plaintiff testified that Sobut had stated that he wanted to sell and if plaintiff had a buyer Sobut would list the property with plaintiff and the details should be worked out with Shapiro. Sobut stated that he wanted $667,000 for the property. Plaintiff further testified that he never had any conversations with Sobut subsequent to the conversation relative to plaintiff's employment and that he has never received any communication from any persons, named as defendants,

denying that plaintiff was employed as a broker or entitled to a commission.

On cross-examination plaintiff admitted that Sobut never gave plaintiff a written listing. Plaintiff further admitted that he never discussed commissions with Sobut nor did he discuss the period for which the "exclusive" was to continue. Plaintiff testified that his claim of procuring a buyer ready, willing and able to purchase was based entirely upon his conversation with Mr. D'Arcy, who had represented himself as the agent for Financial Management Associates, Inc.

■■ Although not critical to the disposition of this case, it is unclear as to whether plaintiff's alleged "exclusive listing" was to be an exclusive agency or an exclusive right to sell. In the former situation the owner is not precluded from selling the property himself, but is only barred from appointing another agent, while in the latter case the owner remains liable for the commission even if he effects the sale himself. *Flynn v. La Salle National Bank* (1956), 9 Ill. 2d 129, 137 N.E.2d 71.

■■ The record clearly reflects the absence of any written "exclusive" brokerage contract. This fact alone would be insufficient to deny the existence of a brokerage contract. While a contract of employment is necessary to create an agency relationship between a broker and an owner of property, no particular form is required. Ordinarily, all that is necessary is that the broker act with the consent of his principal, either by written instrument, orally or by implication from the conduct of the parties. *Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App. 3d 1060, 307 N.E.2d 445; accord, *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361.

■■ However, irrespective of the fact that a brokerage contract may be oral, a broker's contract is governed by the law applicable to ordinary contracts. Parties' minds must meet through offer and acceptance, and the contract must be definite in its terms. *Theis v. Itterman* (1946), 329 Ill. App. 512, 69 N.E.2d 371 (abstract).

■■ The record is conspicuously devoid of a sufficiently detailed agreement upon which to base a brokerage contract. The testimony, previously summarized, indicates that all details were to be worked out with the Sobuts' attorney, George Shapiro. No evidence was adduced indicating what the details would be. There was no mention of a legal description of the property to be sold, the time period over which the "exclusive" would exist, a specific commission or rate of commission to be earned by plaintiff or a specific description of the prospective purchaser. Though plaintiff and the Sobuts may have been negotiating for an exclusive listing we are unable to hold that such listing ever materialized. Plaintiff, therefore, was not entitled to a brokerage commission pursuant to an exclusive listing.

■■ Despite the absence of a brokerage contract, plaintiff is entitled to

quasi-contractual relief if defendants took advantage of plaintiff's efforts and services as a broker and deliberately tried to deprive plaintiff of the brokerage commission. (*Dickerson Realtors, Inc. v. Frewert* (1974), 16 Ill. App. 3d 1060, 307 N.E.2d 445.) The quasi-contractual recovery is predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. *First National Bank of Lincolnwood v. Glenn* (1971), 132 Ill. App. 2d 322, 270 N.E.2d 493.

■■ We must find that plaintiff is not entitled to any recovery based upon a theory of quasi-contract. James D'Arcy testified that in late 1969 or early 1970 he conversed with Joe Getto, vice president of real estate for Pullman Bank. During that conversation D'Arcy learned that the Pullman Banking Group had an interest in the Sobuts' property as a potential bank site and that the group had previously been negotiating with the Sobuts for some time but were unable to arrive at a satisfactory agreement with respect to price and other matters. From this testimony it is apparent that Pullman's negotiations with the Sobuts preceded plaintiff's alleged involvement in the sale and lease of the real estate. Consequently, we are unable to find that the Sobuts benefitted from any effort made by plaintiff with respect to the subsequent sale and lease of the real estate. Plaintiff neither procured the prospective purchaser nor served as a catalyst for the real estate transaction.

Finally, we must address ourselves to plaintiff's contention that defendants civilly conspired to deprive plaintiff of a brokerage commission. A civil conspiracy that gives rise to a cause of action is a combination of two or more persons for the purpose of accomplishing by concerted action either a lawful purpose by an unlawful means or an unlawful purpose by lawful means. *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 345 N.E.2d 186; *De L'Ogier Park Development Corp. v. First Federal Savings and Loan Association of Berwyn* (1972), 6 Ill. App. 3d 807, 286 N.E.2d 583.

■■ We find no merit to plaintiff's contention. Our foregoing discussion reflects that plaintiff is not legally entitled to a commission. We would be hard-pressed to hold that defendants conspired to deprive plaintiff of a brokerage commission to which plaintiff was not legally entitled. The record is absent of any facts supportive of plaintiff's theory.

Based upon the aforementioned testimony adduced at trial and the applicable principles of law, we cannot say that the decision of the trial court in granting defendants' motion for directed finding was "manifestly erroneous." The judgment of the circuit court of Cook County is, therefore, affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.