MICHIGAN AVENUE NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* STATE FARM INSURANCE COMPANIES *et al.*, Defendants-Appellees.

First District (4th Division)    No. 79-190

Opinion filed April 17, 1980.—Rehearing denied May 15, 1980.

Feiwell, Galper & Lasky, Ltd., of Chicago (Michael A. Braun and Bernard L. Rivkin, of counsel), for appellant.

Lawrence, Lawrence, Kamin and Saunders (Howard P. Kamin and Ira Gould, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff filed a complaint alleging that the defendants were guilty of certain actions which constituted interference with prospective business advantage. Certain of the defendants (the appellees here) filed a motion to dismiss pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48). In the reply brief (not the motion itself) they contended they could not be held liable as they were competitors of plaintiff. The trial court granted the motion, dismissed the appellees as defendants and ruled pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)), that there was no reason to delay appeal. We find defendants' motion to be insufficient and reverse for further proceedings.

The plaintiff is trustee of a trust holding title to real property operated as the Summit Plaza Shopping Center (Summit). In its amended complaint, it alleged that:

1. Defendant Percy Wilson Mortgage and Finance Company (Percy Wilson) was a mortgage banker and broker and serviced mortgage loans for lenders.

2. Percy Wilson on November 1, 1972, acting as plaintiff's mortgage banker, obtained on behalf of plaintiff a mortgage in the amount of $1,500,000 from defendant State Farm Insurance Companies (State Farm) which company as part of its ordinary course of business invested in first mortgages on real property. Percy Wilson was paid $7,500 by the plaintiff as its commission.

3. Thereafter Percy Wilson acted as loan servicing agent for State Farm and, as loan servicing agent and as mortgage banker for plaintiff, had access to plaintiff's books and records, and was privy to all information relevant to the operation of Summit, plaintiff's leases and all other contracts relating to the property.

4. In "December 1976 [sic—apparently December 1975 was intended]" Summit became distressed as a result of a loss of a major tenant, W. T. Grant & Co., which filed for bankruptcy.

5. Thereafter, Percy Wilson, State Farm, E. N. Maisel & Associates (Maisel) (one of the appellees), a corporation which plaintiff believed to be engaged in the business of real estate development and leasing with particular regard to leasing stores to major retail operators, and Marion August (August) (the other appellee) an individual believed by the plaintiff to be the agent of Maisel and the nexus between Maisel and the other defendants, acting individually and in concert with each other, embarked upon a

course of conduct intended and calculated to deprive plaintiff of the property by use of economic duress and the utilization of confidential and private information made available to defendants through Percy Wilson and State Farm.

6. On or about "February 24, 1976 [*sic*—apparently February 1977 was intended]" plaintiff, having no knowledge of the scheme, advised Percy Wilson and State Farm that it had succeeded in negotiating a sale of Summit at a sale price of $2,531,000, which sale would result in an equity to plaintiff of about $1,000,000.

7. Thereafter, in furtherance of the conspiracy and the course of conduct of defendants to deprive plaintiff of the property, Percy Wilson and State Farm unreasonably withheld their approval of the sale; Percy Wilson, through an agent, informed August and Maisel of the contract to sell; Maisel, through August, purchased the mortgage lender's position to State Farm and in connection with this purchase caused State Farm to formally refuse its approval of the sale.

8. Maisel, although having no ownership interest whatever in the subject shopping center and at the time of its original negotiations having no interest of any kind in the said property, had negotiated a lease of the vacant space in Summit to S. S. Kresge Company (Kresge).

9. Upon discovery of this negotiation, plaintiff as owner of Summit, contacted Kresge to offer it the space.

10. In furtherance of the course of conduct to deprive plaintiff of the property, the defendants acting individually or in concert made representations to officers and agents of Kresge relating to plaintiff's solvency and general financial condition with the intent and purpose of interfering with and obstructing any negotiations of plaintiff with Kresge, such statements were in some respect false as defendants knew or should have known and constituted a slander of credit.

11. At all times complained of, Percy Wilson was in a fiduciary capacity with respect to plaintiff and had a duty not to disclose financial information and general information about plaintiff and its business and had a duty to inform plaintiff of any available lessees.

■■ Maisel and August filed a section 48 motion to dismiss stating that the complaint was based on a claim of conspiracy to cause State Farm to refuse its approval of the sale, that State Farm had a legal right to reject the sale contract, and a conspiracy to do a lawful act is not a tort (this is not totally accurate, a conspiracy to accomplish a lawful act by unlawful means is a tort). (*Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724.)

They also relied on section 7 of the mortgage act (Ill. Rev. Stat. 1975, ch. 95, par. 57), which gives a mortgagor 90 days within which to pay past due mortgage installments after service of summons in the foreclosure suit, contending that by failing to make such payments within the 90-day period, plaintiff waived its statutory right to make the mortgage current.[1]

Since the complaint, while alleging certain acts of conspiracy, also alleged other tortious acts, including tortious interference with prospective economic advantage and the use of certain improper means, including defamation and the use of confidential information, this motion was insufficient to raise a defense barring plaintiff's cause of action. The plaintiff in its answer denied its claim against the two defendants was based on section 7 of the mortgage act or on a claim of conspiracy and stated that it was based on the two defendants' own tortious conduct in inducing a third person not to enter into or continue a business relation with another, such tort being recognized in Illinois. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1973), 16 Ill. App. 3d 709, 306 N.E.2d 549, *aff'd in part, rev'd in part on other grounds* (1975), 61 Ill. 2d 129, 334 N.E.2d 160.) Maisel and August did not file a new or amended motion under section 48 but simply filed a reply brief. In this brief they stated:

1. the motion was neither a motion for summary judgment nor a section 45 motion but one under section 48;

2. there were no facts in the complaint to establish the alleged interference;

3. as plaintiff's competitor, the two defendants were legally privileged to purchase the mortgage and cause State Farm's refusal to approve the sale;

4. plaintiff had no reason to expect that State Farm would approve the sale contract.

At no time either in the brief or at the hearing before the trial judge, did the two defendants address the question whether they had used improper means in accomplishing their purpose. The trial court after hearing arguments granted Maisel's and August's motion and the plaintiff appealed.

## I.

Section 48 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48) provides in part that the defendant may within the time for pleading file a motion for dismissal of the action upon any of the eight specified grounds (not applicable to this case) or on the ground "that the claim or demand asserted against defendant is barred by other

---

[1] The foreclosure proceedings were filed in November 1976.

affirmative matter avoiding the legal effect of or defeating the claim or demand." Motions made pursuant to this section must be limited to one of these nine grounds. (*Phillips Construction Co. v. Muscarello* (1976), 42 Ill. App. 3d 151, 355 N.E.2d 567, *appeal denied* (1977), 65 Ill. 2d 580; *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 325 N.E.2d 799.) Even if the plaintiff's claim had been solely one for conspiracy the defendant's motion would have been improper and insufficient since in alleging that defendants had a right to act as they did they were merely attacking plaintiff's claim not raising an affirmative defense. The burden is on a plaintiff alleging conspiracy to prove a conspiracy which consists of a combination formed by two or more persons to do an unlawful act or to do a lawful act by unlawful means. (*Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724; *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 345 N.E.2d 186, *appeal denied* (1976), 63 Ill. 2d 564; *Alm v. General Telephone Co.* (1975), 27 Ill. App. 3d 876, 327 N.E.2d 523, *appeal denied* (1975), 60 Ill. 2d 595; *De L'Ogier Park Development Corp. v. First Federal Savings & Loan Association* (1972), 6 Ill. App. 3d 807, 286 N.E.2d 583.) Accordingly, the defendants' contention that the act was lawful does not raise an affirmative defense but simply goes to negate substantial allegations of ultimate fact in the complaint, and this is not the proper purpose of a section 48 motion. (*Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 369 N.E.2d 365.) As that court pointed out at 54 Ill. App. 3d 261, 265-66, 369 N.E.2d 365, 369:

> "That section 48 was not intended to have such a broad coverage is shown by paragraph 3 of the section. At a hearing on a section 48 motion, it permits the court to determine disputed facts. If defendants' interpretation of the breadth of the section is correct, the court, in the absence of a jury demand could decide a case contested on all of the issues upon affidavits and evidence. Under this interpretation, the section has a broader scope than the summary judgment provisions of section 57. It thus appears evident that the phrase 'affirmative matters' did not include every statement of evidentiary fact which tends to negate the allegations of the complaint.
> * * *
> The effect of defendants' motion here is to question the sufficiency of the complaint and at the same time to set forth voluminous facts answering the allegations of ultimate fact in the complaint. * * * If the facts set forth in defendants' affidavits are undisputed and as a matter of law would preclude recovery, that issue can only be raised before trial in a motion for summary judgment."

While defendants' allegation of waiver of any rights under section 57

of the mortgage act was, of course, the raising of an affirmative defense, it did not serve totally to refute even the claim of conspiracy. But in any event the defendants' motion was insufficient since to be sufficient "the claim or demand * * * [must be] *barred* by other affirmative matter avoiding the legal effect of or defeating the claim or demand," not part of the claim or demand. (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).) The defense of waiver (and even the allegation that State Farm had a right to reject the sale) did not reach the total claim which included a claim for interference with prospective economic advantage. Accordingly, the motion was insufficient and should have been denied.

## II.

The defendants never attempted to amend this motion to cure its defects. They did attempt to raise new matter in their reply brief. It takes no citation of legal authority to support the proposition that a brief is not a motion and cannot substitute for one. However, since the plaintiff neither moved below to strike the motion and brief nor raised the contention on appeal, we will consider the issues raised in the reply brief.

## A.

■ The defendants' contention that the complaint failed to state a cause of action in that there were no facts alleged in the complaint to support a claim of interference with prospective economic advantage was not properly before the trial court and is not properly before this court. As we have already stated, motions made pursuant to section 48 are limited to the nine grounds specified in the statute. A failure to state a cause of action is not one of them. A motion premised on the contention a complaint failed to state a cause of action is not a section 48 motion but a section 45 (Ill. Rev. Stat. 1977, ch. 110, par. 45) motion. (*Andre v. Blackwell Electronics Industrial Co.* (1972), 7 Ill. App. 3d 970, 289 N.E.2d 27.) It would be improper and unjust to allow the defendants to attack the pleadings after failing to file a motion pointing out specifically the defects complained of as required by statute (Ill. Rev. Stat. 1977, ch. 110, par. 45(1)), since the purpose of the statute is to give the plaintiff an opportunity to respond to the objection and to cure the defect in the trial court. *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 360 N.E.2d 785, *appeal denied* (1977), 66 Ill. 2d 630.

Moreover, although plaintiff's complaint is inartistic and should be amended to clarify its contentions, we cannot say that it fails to contain "such information as reasonably informs the opposite party of the nature of the claim * * * which he is called upon to meet." Ill. Rev. Stat. 1977, ch. 110, par. 42.

B.

Restatement (Second) of Torts §767 (1979) defines the factors to be considered in determining whether interference is improper as follows:

"In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive, ·

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties."

Section 768 develops the last factor providing:

"(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at lease in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will."

We need not decide whether in fact the plaintiff and the defendants were competitors, whether the defendants' conduct in persuading State Farm not to consent to the sale and in acquiring first the mortgage and later the property is related to the competition between them, and whether the defendants' motive is relevant (but see *Lowell v. Mother's Cake & Cookie Co.* (1978), 79 Cal. App. 3d 13, 144 Cal. Rptr. 664), since we find the issues were not properly before the trial court. First of all, we note that it is not clear whether engaging in competition is an affirmative defense to be raised and proved by the defendant or instead is simply not improper

conduct inconsistent with the American system of free enterprise. (Restatement (Second) of Torts §768, comment a (1979).) If it is the latter, then, of course, the issue cannot be raised by a section 48 motion. But even if it is an affirmative defense, as the parties assumed it to be, the defendants have failed to raise the defense since they have failed to allege and prove that they did not employ wrongful means. As is clearly set forth in the *Restatement*, the availability of the rule relating to competition is dependent on the actor not having used unfair means.

On appeal, the defendants have contended that this issue was waived by the plaintiff's failure to specifically raise in it its trial court briefs or at the hearing. We agree it would have been more prudent for the plaintiff to have drawn the trial court's attention to this defect. Nevertheless, the burden was on the defendants to raise and prove the affirmative defense relied upon in their motion (*Stockton v. Mendoza* (1977), 46 Ill. App. 3d 108, 360 N.E.2d 561), and this they could not do without proving all of the conditions upon which the existence of the defense depended. Furthermore, the defendants were already put on notice by the complaint that the plaintiff was contending that improper means, namely slander of credit and the use of confidential information, had been employed. Finally the plaintiff was handicapped by the fact that the issues raised by the reply brief had no relation to the issues raised in the motion.

## C.

The defendants' last contention, that the plaintiff had no reasonable business expectation that State Farm would approve the sale contract cannot properly be raised by a section 48 motion since, as the defendants concede, this is an essential element of the plaintiff's claim and thus is not an affirmative defense. *Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 369 N.E.2d 365.

Accordingly the judgment of the trial court is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.