*In re* MARRIAGE OF PAULA SUE KRAMER, Petitioner-Appellee, and RONALD J. KRAMER, Respondent-Appellant.

Fourth District   No. 4—93—0079

Argued July 20, 1993.—Opinion filed November 30, 1993.—
Rehearing denied January 27, 1994.

Randall P. Ray (argued), of Sebat, Swanson, Banks, Garman & Townsley, of Danville, for appellant.

Thomas M. Goodwin (argued), of Dougherty, Hofmann & Goodwin, P.C., of Danville, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

This appeal arises from an attempt by petitioner, Paula Sue Kramer, to enforce the terms of a 1974 divorce decree and recover arrearages in child support. In April 1992, Paula filed a petition in the circuit court of Vermilion County, pursuant to section 12—603 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 12—603), seeking the registration of the 1974 Nebraska divorce decree. The divorce decree ordered respondent, Ronald J. Kramer, to pay Paula $100 per month in child support. After the divorce decree had been registered, Paula filed a petition for money judgment seeking the arrearages in child support. The trial court subsequently ordered Ronald to pay her $25,382.27 in back child support and interest. Ronald appeals, arguing that (1) the statute of limitations barred the collection of that portion of the arrearages accruing prior to September 9, 1986, as a matter of law; (2) Paula's action was barred under a theory of *laches*; and (3) he complied with a California Uniform Reciprocal Enforcement of Support Act (URESA) child support order, which modified the 1974 Nebraska order, and no arrearages existed. We affirm in part, reverse in part, and remand with directions.

I. BACKGROUND

The parties married in South Dakota in January 1971. One

child, Melinda Anne Kramer, was born to the marriage in June 1971. In October 1972, the parties moved to California, where they resided until they separated in August 1973. Paula then moved to Nebraska, where she was granted a dissolution of marriage in January 1974. The divorce decree awarded her custody of Melinda and ordered Ronald to pay her $100 per month in child support beginning on October 15, 1973, until Melinda married, reached 19 years of age, died, or became self-supporting after leaving Paula's household.

Later in 1974, Paula brought an action in the Nebraska courts under the Revised Uniform Reciprocal Enforcement of Support Act (see Neb. Rev. Stat. §§42–762 through 42–7104 (1988)) to compel Ronald's performance under the divorce decree in California, where he then resided. In July 1974, the superior court of Sacramento County, California, entered an order reducing Ronald's child support obligation to $50 per month, with payments to cease when the child attained 18 years of age. In the ensuing years, Ronald fully complied with the California order. He discontinued support payments when he received a letter (dated July 14, 1989) from the Sacramento County District Attorney, Office of Family Support, indicating that it was returning his case file to him because the child was emancipated.

While the Nebraska child support record noted that the California order reduced the child support payments, it also noted that the original Nebraska order was never modified to reflect the reduction in child support. The payments made under the reciprocal support order were, however, credited against the amount accruing under the original Nebraska judgment. The principal difference between the support due and accruing under the Nebraska decree and the money actually paid in compliance with the California order was $11,150.

In response to a request by Paula, the county attorney of Dawes County, Nebraska, was appointed in December 1983 to commence child support proceedings against Ronald to collect the reported arrearages. Although Ronald's address was listed on the order as being in California, he moved to Illinois in 1976 or 1977 and has continually resided here since. Proceedings to collect the arrearages, including attempting to register the foreign support order in California, continued until 1986 when Paula failed to complete an affidavit concerning information on direct payments. In 1988, the case was turned over to the Nebraska Department of Social Ser-

vice, Child Support Intercept System. The record before us contains no other evidence regarding the collection of the arrearages.

At some point not reflected in the record, Paula returned to South Dakota. In August 1990, supplemental proceedings were instituted against Ronald in South Dakota. In September 1990, after Melinda had reached 19 years of age, Paula filed an action there for the unpaid portion of the child support payments under the original Nebraska support decree. Ronald was served with the South Dakota petition and process, but he filed no pleading in response. A default judgment was thereafter entered against Ronald, and no appeal was taken therefrom. In April 1991, Paula filed a petition in the Fifth Judicial Circuit of Illinois to register the foreign judgment. Ronald opposed the registration on the basis that the South Dakota court lacked personal jurisdiction over him. The trial court agreed, and on appeal, this court affirmed. See *In re Marriage of Kramer* (1992), 226 Ill. App. 3d 815, 589 N.E.2d 951.

Because Paula could not register the South Dakota judgment, she petitioned to register the original Nebraska judgment of dissolution. In July 1992, she filed a petition for money judgment seeking sums due her for the unpaid child support arising from the original divorce decree. In December 1992, the court filed a memorandum opinion rejecting Ronald's defenses and finding in favor of Paula in the amount of $25,382.27 plus interest on the sum of $11,150 from May 14, 1992, until the sum was paid. Ronald thereafter filed a motion to reconsider, which the court denied.

In June 1989, Melinda visited Ronald in Illinois shortly before her eighteenth birthday—the first time Ronald had seen her since he left California, although they had exchanged phone calls and letters beginning around 1987. When she visited him, Melinda indicated that she had graduated from high school and was going to New York for approximately one year to be a nanny. Ronald continued to correspond with her in New York.

## II. STATUTE OF LIMITATIONS

■ Prior to September 1991, section 12—602 of the Uniform Foreign Money-Judgments Recognition Act stated the following: "On application made within the time allowed for bringing an action on a foreign judgment in this State, any person entitled to bring such action may have a foreign judgment registered in any court of this State having jurisdiction of such an action." (Ill. Rev. Stat. 1989, ch. 110, par. 12—602, repealed by Pub. Act 87—358, eff. September 9, 1991 (1991 Ill. Laws 1921).) Under this section, an

action to commence the registration of a foreign judgment was considered civil in nature, and because no specific statute of limitations covered such an action, the general five-year statute of limitations set forth in section 13—205 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 13—205) applied. See *Vrozos v. Sarantopoulos* (1990), 195 Ill. App. 3d 610, 617, 552 N.E.2d 1093, 1098; *Haughton v. Haughton* (1979), 76 Ill. 2d 439, 447, 394 N.E.2d 385, 389.

In 1991, the legislature repealed sections 12—601 through 12—617 of the Uniform Foreign Money-Judgments Recognition Act and enacted sections 12—627 through 12—634 of the Uniform Enforcement of Foreign Judgments Act (Foreign Judgments Act) (Ill. Rev. Stat. 1991, ch. 110, pars. 12—627 through 12—634). (Pub. Act 87—358, §1, eff. September 9, 1991 (1991 Ill. Laws 1921, 1921-22).) As applied to foreign judgments, section 12—628 of the Foreign Judgments Act provides:

> "A copy of any foreign judgment authenticated in accordance with the acts of Congress or the statutes of this State may be filed in the office of the circuit clerk for any county of this State. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court for any county of this State. *A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court for any county of this State and may be enforced or satisfied in like manner.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 12—628.

Illinois courts have consistently held that an Illinois divorce decree ordering payment of child support is a money judgment subject to the 20-year limitation for enforcement of judgments contained in section 13—218 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 13—218), instead of the five-year statute of limitations contained in section 13—205 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 13—205). Therefore, a parent is not limited in the collection of child support arrearages to those amounts accrued during the five-year period immediately preceding the filing of the petition. *People ex rel. Wray v. Brassard* (1992), 226 Ill. App. 3d 1007, 1013-14, 589 N.E.2d 1012, 1016; *In re Marriage of Yakubec* (1987), 154 Ill. App. 3d 540, 544, 507 N.E.2d 117, 120.

The trial court held that when the instant action was brought in April 1992, the 20-year statute of limitations was in effect and applied to the present case as a result of the enactment of section 12—628 of the Foreign Judgments Act. It therefore held that all of

Paula's claims for arrearages in child support were timely filed and not barred by the five-year statute of limitations.

On appeal, Ronald argues that Paula's claims had expired and were barred by the five-year statute of limitations prior to the effective date of the new provisions of the Foreign Judgments Act. Although he acknowledges that section 13—218 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 13—218) applies, he asserts that because Paula's claims predate September 9, 1986—five years after the effective date of the new act—they were barred by the five-year statute of limitations. Ronald argues that applying the 20-year statute of limitations here retroactively revives Paula's already expired cause of action.

In response, Paula argues that the statute of limitations at the time of the *filing of the application* should govern because prior to the decree being enrolled in Illinois, it was neither cognizable nor subject to any defenses under Illinois law.

■ Generally, statutes of limitations begin to run from, and not until, the time the cause of action accrued. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 762, 455 N.E.2d 246, 251; *Schreiber v. Hackett* (1988), 173 Ill. App. 3d 129, 131, 527 N.E.2d 412, 413; *Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1991), 221 Ill. App. 3d 526, 532, 580 N.E.2d 1198, 1201.) In the present case, the divorce decree provided for monthly child support payments in the amount of $100. Where a money obligation is payable in installments, a separate cause of action accrues on, and the statute of limitations begins to run against, each installment as it becomes due. *Light v. Light* (1957), 12 Ill. 2d 502, 506, 147 N.E.2d 34, 37; *Thread & Gage Co. v. Kucinski* (1983), 116 Ill. App. 3d 178, 184, 451 N.E.2d 1292, 1296.

■ At the time the petition was filed, the 20-year statute of limitations applied to Illinois decrees and thereby applied to foreign decrees registered in Illinois by section 12—628 of the Foreign Judgments Act. *At the time the arrearages accrued, the five-year statute of limitations applied.* Thus, the five-year provision barred those claims arising five years prior to the effective date of the Foreign Judgments Act. The subsequent extension in the statute of limitations would not revive these causes of action because they were previously barred under the five-year statute of limitations. Subsequent legislation extending the statute of limitations cannot be applied retroactively to revive a time-barred cause of action unless the legislature indicates otherwise (*Arnold Engineering, Inc. v.*

*Industrial Comm'n* (1978), 72 Ill. 2d 161, 163, 380 N.E.2d 782, 783; *Johnston v. Tri-City Blacktop, Inc.* (1991), 217 Ill. App. 3d 388, 392, 577 N.E.2d 529, 531), and it did not so indicate here. Accordingly, we hold that the trial court erred by applying the 20-year statute of limitations to the present case.

The fact that Paula did not register the foreign judgment until 1992 does not change the result. The right to register a foreign judgment is procedural, not substantive, in nature. Any right which accrued under the foreign decree vested or lapsed irrespective of its filing. By filing the foreign judgment in Illinois, Paula merely enlisted the aid of the Illinois courts to enforce its provisions. Her doing so did not create any new rights not already existing.

### III. MODIFICATION

Ronald next argues that under Nebraska law, the California order reducing his child support obligation to $50 per month prospectively modified the January 1974 Nebraska judgment. Because he fully complied with the July 1974 California decree, he maintains that no arrearages in child support exist. Ronald acknowledges that Nebraska courts have not resolved the specific issue presented, but he asserts that case law indicates a Nebraska court would "more likely" agree that the California URESA order prospectively modified the Nebraska divorce decree. Alternatively, he argues that because case law suggests Nebraska courts would look to the responding State's order to determine whether it modified the original decree, we should remand this case for further evidence concerning the original California order to determine whether it specifically provided that it was modifying the Nebraska order.

The trial court rejected Ronald's argument and concluded that whether the issue was decided under California or Illinois law, the California order would not be treated as having modified the Nebraska decree. The court further determined that the Nebraska statute was clear and that Nebraska case law did not compel an opposite conclusion.

■ In resolving the particular issue of whether a responding court's child support order prospectively modifies the original order of support, courts look to the responding State's antisupersession or antinullification clause of URESA. (See *In re Marriage of Gifford* (1988), 122 Ill. 2d 34, 37-38, 521 N.E.2d 929, 930-31; *In re Marriage of Head* (1989), 187 Ill. App. 3d 159, 162, 543 N.E.2d 345, 347; *In re Appeal of Crow* (1992), 242 Neb. 54, 56, 493 N.W.2d

169, 171.) Our discussion therefore begins with the antinullification clause of California's URESA statute.

Both California and Nebraska, as well as Illinois, have adopted the 1968 version of URESA. (9B U.L.A. 381 (1987).) Section 1689 of California's Code of Civil Procedure provides as follows:

> "A support order made by a court of this state pursuant to this title does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this state." (Emphasis added.) Cal. Civ. Proc. Code §1689, at 371 (Deering 1981).

Pursuant to this section, which California adopted in 1970, California courts have held that while a reciprocal support order, in and of itself, does not supersede a prior support order, a reciprocal order can supersede and effectively modify a prior support order *if the responding court specifically so provides in its order.* See *In re Marriage of Popenhager* (1979), 99 Cal. App. 3d 514, 522-23, 160 Cal. Rptr. 379, 383-84; *Trippe v. Trippe* (1975), 53 Cal. App. 3d 982, 986-88, 126 Cal. Rptr. 214, 215-17.

In the present case, Ronald did not make the California order part of the record on appeal. The burden of proving an affirmative defense rests with the one asserting it. (*Pascal P. Paddock, Inc. v. Glennon* (1964), 32 Ill. 2d 51, 54, 203 N.E.2d 421, 423; *Michigan Avenue National Bank v. State Farm Insurance Cos.* (1980), 83 Ill. App. 3d 507, 514, 404 N.E.2d 426, 431.) By failing to include the order in the record, Ronald has failed to meet his burden of establishing that the California order specifically contained language modifying the Nebraska order.

Further, the record does not otherwise show any indication that the California order specifically intended to nullify or modify the Nebraska order, nor does it appear that a separate action was instituted to modify the Nebraska order. The child support record specifically recognized the California order reduced respondent's child support obligation to $50 per month, but also made a notation that the Nebraska decree was never modified to reflect the reduction, although the money paid was credited against the original judgment.

In the absence of a clear statement of intent to modify the prior support order, the California order should be seen as providing an additional and separate means of enforcing the child support obligation, rather than as modifying the Nebraska decree. Under the California statute, without a specific indication that the responding court's decree was modifying the original support order, the original support order is controlling and is not nullified or modified by the subsequent decree. To hold otherwise would contradict the express language of the statute. Therefore, the California order did not prospectively modify the Nebraska order.

This determination is in accord with other Illinois cases which have addressed the same or similar issues (see *Gifford*, 122 Ill. 2d at 39, 521 N.E.2d at 931; *Head*, 187 Ill. App. 3d at 162-63, 543 N.E.2d at 347 (finding in absence of a clear statement of an intent to nullify a prior support order, the Kansas order merely provided an additional and separate means for enforcing the support obligations); *In re Marriage of Wettstein* (1987), 160 Ill. App. 3d 554, 559-60, 514 N.E.2d 783, 786-87 (concluding Ohio order entered pursuant to URESA did not nullify the previous Illinois order); *People ex rel. Oetjen v. Oetjen* (1980), 92 Ill. App. 3d 699, 703, 416 N.E.2d 278, 281-82 (once an URESA support order is established, it is not automatically modified or nullified by a subsequent support order in the divorce action unless the divorce court so specifies); *Sullivan v. Sullivan* (1981), 98 Ill. App. 3d 928, 931, 424 N.E.2d 957, 959-60 (finding the trial court's decision to recognize the Ohio (responding court) order reducing child support over the previous Illinois order (initiating court) was not error in that both parties were present, and law under URESA was that responding court could enter a new decree for a different amount of prospective child support from that of the initiating court)), as well as the decisions of other jurisdictions. See *Howard v. Howard* (Miss. 1966), 191 So. 2d 528, 531; *In re Westberry* (1982), 134 Ariz. 29, 32, 653 P.2d 379, 382; *Oglesby v. Oglesby* (1973), 29 Utah 2d 419, 420, 510 P.2d 1106, 1107; *Ray v. Ray* (1981), 247 Ga. 467, 469, 277 S.E.2d 495, 496; *Thompson v. Thompson* (S.D. 1985), 366 N.W.2d 845, 847-48; *Jaramillo v. Jaramillo* (1980), 27 Wash. App. 391, 393-94, 618 P.2d 528, 529; *Despain v. Despain* (1956), 78 Idaho 185, 190, 300 P.2d 500, 503; *Campbell v. Jenne* (1977), 172 Mont. 219, 222-23, 563 P.2d 574, 576-77; *Peot v. Peot* (1976), 92 Nev. 388, 390, 551 P.2d 242, 243-44; *D.L.M. v. V.E.M.* (Ind. App. 1982), 438 N.E.2d 1023, 1028-29; *Lanum v. Lanum* (1983), 92 A.D.2d 912, 912, 460 N.Y.S.2d 344, 345; *Hamilton v. Hamilton* (Ky. 1972), 476 S.W.2d 197, 200; *Nissen*

*v. Miller* (Tenn. App. 1982), 642 S.W.2d 428, 429; *Bjugan v. Bjugan* (Wyo. 1985), 710 P.2d 213, 216-17; *Wornkey v. Wornkey* (1988), 12 Kan. App. 2d 506, 512, 749 P.2d 1045, 1050; *Foster v. Marshman* (1980), 96 Nev. 475, 478-79, 611 P.2d 197, 199; *Banton v. Mathers* (1974), 159 Ind. App. 634, 639-44, 309 N.E.2d 167, 170-73; *County of San Diego v. Elavsky* (1979), 58 Ohio St. 2d 81, 85-87, 388 N.E.2d 1229, 1232-33; *In re Custody of Gulick* (1984), 100 Nev. 125, 128-29, 676 P.2d 801, 803-04; *Nomer v. Kossman* (1980), 100 Idaho 898, 902, 606 P.2d 1002, 1006; *In re Marriage of Enewold* (Colo. Ct. App. 1985), 709 P.2d 1385, 1387; *Faribault-Martin-Watonwan Human Services ex rel. Jacobson v. Jacobson* (Minn. Ct. App. 1985), 363 N.W.2d 342, 345; *Coogan v. Fennell* (N.D. 1985), 379 N.W.2d 791, 796; *Cass v. Lassiter* (1986), 2 Va. App. 273, 276, 343 S.E.2d 470, 474; see also Annot., 31 A.L.R.4th §6, at 365 (1984).

## IV. LACHES

Finally, Ronald argues that the equitable doctrine of *laches* prevents Paula from recovering any delinquent child support payments that accrued after Melinda reached 18. He contends that shortly before Melinda turned 18, he was advised that she was moving to New York to become a nanny, and after she reached 18, he received notice that child support payments were no longer required under the California order because she had reached the age of majority. He argues that had he known Paula still considered the Nebraska decree to be in effect, he would have petitioned the Nebraska court to terminate child support payments based on Melinda becoming self-supporting. Because Paula waited to pursue recovery of the back child support payments until after Melinda's nineteenth birthday, Ronald alleges that he "has been harmed and prejudiced in that he has foregone his right to terminate child support upon the child reaching her eighteenth (18th) birthday." He therefore contends that he has been injured by Paula's delay and should not be liable for $1,200 in child support which accrued after Melinda reached 18 years of age.

The supreme court has discussed *laches* as follows:

> "*Laches* is an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. [Citation.] The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing

party. [Citation.] Two elements are necessary to a finding of *laches*: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay." (Emphasis in original.) (*Tully v. State* (1991), 143 Ill. 2d 425, 432, 574 N.E.2d 659, 662.)

Further, in fixing the period in which rights and claims would be barred by *laches*, equity follows the law. Generally, courts of equity will adopt the period of limitations fixed by statute. Thus, when a claim or right is not barred by a limitations period, *laches* will not apply unless special circumstances make it inequitable to grant the relief requested. (*Aiardo v. Village of Libertyville* (1989), 184 Ill. App. 3d 653, 659, 540 N.E.2d 861, 866; *Davis v. Board of Review of the Department of Labor* (1985), 132 Ill. App. 3d 853, 856, 477 N.E.2d 842, 845.) Application of the doctrine of *laches* lies within the sound discretion of the trial court, and this court will not disturb its decision absent an abuse of discretion. See *Finley v. Finley* (1980), 81 Ill. 2d 317, 330, 410 N.E.2d 12, 18; *City of Rolling Meadows v. National Advertising Co.* (1992), 228 Ill. App. 3d 737, 745, 593 N.E.2d 551, 557.

■ In denying Ronald's claim for relief based upon the doctrine of *laches*, the trial court specifically found that he failed to prove he was dissuaded from filing any petition to modify the Nebraska decree by any act or omission attributable to Paula. Therefore, the court concluded that he failed to prove the requirements of *laches*. Under the circumstances presented, we hold that the trial court did not abuse its discretion in so ruling.

As the evidence showed, Paula instituted several proceedings throughout the years in an attempt to recover the arrearages in child support. This final effort resulted in the filing of the Nebraska divorce decree in 1992, approximately two years after Melinda attained 19 years of age. Ronald only argues that the arrearages in child support accruing after Melinda reached age 18 are barred by *laches*. Paula's action to recover this specific amount falls within the five-year statute of limitations. Therefore, she did not unnecessarily delay in initiating the suit so as to cause prejudice to Ronald. Moreover, Ronald's failure to institute an action to modify the Nebraska decree was not attributable to any delay on her part. The evidence indicated that Ronald stopped making child support payments based on the letter he received indicating that he no longer had to continue payments because Melinda was emancipated. Ronald's failure to modify the divorce decree was in reaction to this letter and his belief that he was no longer liable for the amount

specified in the Nebraska decree, not on any action or omission attributed to Paula. His erroneous belief does not bar Paula's recovery under this theory. He could have moved to modify the Nebraska decree at any time, but did not. Accordingly, the trial court did not abuse its discretion in ruling that he failed to establish Paula was guilty of *laches*.

### V. CONCLUSION

For the reasons stated, the trial court's order is affirmed in part, reversed in part, and the cause is remanded for a recalculation of arrearages and interest thereon.

Affirmed in part; reversed in part and remanded.

McCULLOUGH and LUND, JJ., concur.