SHARON ANN DUDA, Adm'r of the Estate of David W. Duda, *et al.*, Plaintiffs-Appellees, *v.* FRANK HABERMAN *et al.*, Defendants-Appellants.

(No. 73-285;

Second District (1st Division)—February 14, 1975.

Robert H. Heise, of Wheaton, for appellants.

Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton (James F. Quetsch, John R. Mackay, and Louis P. Vitullo, of counsel), for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

The instant action was brought by Sharon Ann Duda, individually and as administrator of the estate of David W. Duda, under the provisions of the dramshop act of Illinois (Ill. Rev. Stat. 1967, ch. 43, § 135). The action was originally brought against several defendants. The case was tried before a jury and at the conclusion of the plaintiffs' case a directed verdict was entered as to the defendants other than Frank Haberman and James Haberman, d/b/a Venard's. The jury returned a verdict in favor of the plaintiffs in the total sum of $66,500. Upon motion by the defendants, the trial court reduced the judgment to the sum of $20,000, being the maximum allowable under the provisions of the dramshop act.

On the night of June 14, 1969, David Duda was in Venard's tavern in Westmont, Illinois, with a number of friends, including his wife and sister-in-law, one Ronald Dietschweiler, and one Thomas Mottlow, among others. Dietschweiler had apparently come to the tavern at approximately 8:30 in the evening, and later that evening Dietschweiler drove Mottlow to his place of residence, accompanied by Duda. They returned to Venard's tavern and remained there until either 12 or approximately 2 A.M., there being a conflict in the testimony as to the time Dietschweiler and Duda left the tavern. During the course of the evening Dietschweiler consumed alcoholic beverages in Venard's tavern. Dietschweiler, accompanied by Duda, then drove his 1969 Cadillac to another tavern called The Blue Front. Dietschweiler and Duda entered the tavern and after a period of time were asked to leave. They then drove to Lemont where they entered an unnamed tavern and were refused service. It may be safely assumed that they were refused service because

of their intoxicated condition. Duda then walked to another tavern while Dietschweiler remained in the car. Upon Duda's return Dietschweiler then drove towards Westmont. He apparently fell asleep, drove off of the road, struck a culvert and both he and Duda were injured, Duda being so severely injured that he died shortly thereafter.

■■ At the outset it is to be noted that this is a "by" action brought under the provisions of the dramshop act of Illinois. As has been repeatedly stated, there are two types of actions possible under the provisions of this act, one known as a "by" action and the other known as an action "in consequence of the intoxication." The courts of Illinois have rather clearly defined this distinction between the two types of action and the degree of proof necessary in either one. In *Cope v. Gepford* (1945), 326 Ill.App. 171, 176, 61 N.E.2d 394, 396, the court there pointed out the distinction:

> "It will be noted that the act affords a right of action to one injured in person or property or means of support (1) 'by any intoxicated person,' or (2) 'in consequence of the intoxication, habitual or otherwise, of any person.' In the first instance the action is for a direct injury inflicted by an 'intoxicated person,' and in the second instance it is for such injury as may be suffered 'in consequence of intoxication' of any person."

The court then went on to state that the case considered by them therein was an "in consequence" case and that it was incumbent upon the plaintiff to prove that the intoxication was the proximate cause of the injury. In *Danhof v. Osborne* (1957), 11 Ill.2d 77, 142 N.E.2d 20, the supreme court considered the same issue and in that case, which was an "in consequence" type of case, the court stated that it was incumbent upon the plaintiff to prove that the intoxication of the plaintiff's husband was the proximate cause of the injury. Somewhat in summation, the supreme court, in *Hernandez v. Diaz* (1964), 31 Ill.2d 393, 397, 202 N.E.2d 9, 12, made the following statement in citing *St. Clair v. Douvas* (1959), 21 Ill. App.2d 444, 452, 158 N.E.2d 642, 647:

> "Under the Act two causes of action are given: one for an injury resulting from the direct affirmative act of an intoxicated person, and the other for an injury resulting 'in consequence of the intoxication, habitual or otherwise.'"

The court succinctly stated that:

> "What is required under the theory of a 'by' action is that the direct affirmative act of an intoxicated person must have a causal connection with the injuries sustained by the plaintiff." 31 Ill.2d 393, 398, 202 N.E.2d 9, 12.

■■ In the case before us there is no argument but that the intoxication

of Ronald Dietschweiler, the driver of the car, had a direct causal connection with the death of the plaintiffs' decedent, David Duda. We find that this is not a "by" type of action under the dramshop act and plaintiff must prove a causal connection between the intoxication and the injuries resulting in the death of plaintiffs' decedent.

In the appeal before us the defendants contend (1) that the plaintiffs failed to establish a *prima facie* case; (2) that the verdict was against the manifest weight of the evidence; (3) that the trial court improperly restricted cross-examination of plaintiffs' witness which constituted prejudicial reversible error; (4) that the attorney for the plaintiffs made prejudicial remarks during final argument which constituted reversible error; and (5) that the award to the plaintiffs of $20,000 was excessive.

■■ Turning to the first contention of the defendants, the gist of the argument presented is that the accident was caused by Dietschweiler falling asleep and that the plaintiffs failed to prove that the intoxication of Dietschweiler was the cause of his falling asleep. This is a somewhat novel argument and is contrary to common knowledge. In the case of *Weisguth v. Stack* (1911), 165 Ill.App. 462, 465, the court there considered a case where plaintiff's husband became intoxicated in a tavern, fell asleep in the back room of the saloon and was robbed of $85. The case was tried by a jury, and the court made the following interesting observation:

> "[O]n the other hand the jury were justified in finding, as they must have, that the money would not have been taken from Weisguth had he not been in a drunken sleep brought about by the intoxication."

Likewise in *Grant v. Paluch* (1965), 61 Ill.App.2d 247, 253, 210 N.E. 2d 35, 38, the court there stated:

> "It is common knowledge that there are varied effects of alcoholic liquors upon persons."

As we will point out later herein, there is no question in this court's mind that Dietschweiler was intoxicated. We agree with the courts as stated in *Weisguth* and *Grant* that intoxication does bring about drunken sleep as a matter of common knowledge. We find plaintiffs did, therefore, establish a *prima facie* case in this regard.

We do not find that it is any more necessary to prove by expert testimony that intoxication may and does cause an intoxicated person to fall asleep than it would be necessary to prove by expert testimony that intoxication causes a man's speech to be slurred or that an intoxicated person is unable to walk steadily.

■■ The next contention of the defendants is that the verdict is against the manifest weight of the evidence. In support of this contention, the

defendants state that where the facts are controverted the proof of a mere possibility is not sufficient. We find from the facts as indicated herein that, although controverted, the evidence satisfactorily indicates that Dietschweiler did in fact become intoxicated in the tavern in question and as a result of his intoxication the plaintiffs' decedent was killed. Defendants further contend that a verdict must not be based upon speculation, conjecture or surmise. In support of this contention the defendants state that the defendant owner of the tavern testified that Dietschweiler was not intoxicated at the time he left Venard's tavern and that Dietschweiler himself testified that he was not intoxicated at that time. As defendants point out, this is a controverted fact, and the evidence on behalf of the plaintiffs was that he was observed in an intoxicated condition at the tavern, and the further evidence is, at best, that he had one drink at the subsequent tavern visited by Dietschweiler. It is again to be noted that they were ejected from that tavern and upon their attempt to enter another tavern were refused admission. The evidence that Dietschweiler was intoxicated at the time he left Venard's tavern is, even though controverted, further substantiated by the fact, as indicated herein, that the two officers who appeared upon the scene of the accident testified that in their opinion Dietschweiler was, in fact, intoxicated at the time of the accident. Defendants further contend that Dietschweiler was not intoxicated at the time of the accident. In support of this contention he points out the fact that a Sergeant Gogliotti, one of the three officers at the scene, testified that he did not form an opinion as to whether or not Dietschweiler was intoxicated. This statement is not in conflict with that of the other two officers and obviously is merely a statement that he did not observe one way or the other whether Dietschweiler was intoxicated. Further, defendants contend that if this court should find Dietschweiler was intoxicated at the time of the accident, the manifest weight of the evidence is that he became intoxicated at the Blue Front Tavern after leaving defendants' tavern. Again, defendants say this is a controverted fact. The only evidence in the record as to consumption of alcoholic beverages by Dietschweiler after leaving Venard's tavern was his statement that he might have had a drink at the Blue Front Tavern. Lastly, defendants again reiterate the contention that, conceding Dietschweiler was intoxicated, the accident occurred because Dietschweiler fell asleep and the plaintiffs did not prove the intoxication caused the party to fall asleep. Considering all of these arguments, in substance, the defendants have admitted that these are controverted facts. If, in fact, they are, the jury was justified in finding that the death of the decedent was caused as a direct result and by the intoxication of the driver of the motor vehicle, Ronald Dietschweiler.

Defendants argue that they were prejudiced because they were not

allowed to cross-examine one of the investigating officers at the scene of the accident as to whether he issued a traffic summons to Dietschweiler. This argument is without merit. In *Allen v. Yancy* (1965), 57 Ill.App.2d 50, 206 N.E.2d 452, the trial court admitted evidence by the investigating police officer that he did not issue a ticket or summons. Plaintiff objected. The court stated that the trial court erred in not striking this testimony as the jury might have properly inferred from it that in the officer's opinion the defendant was not at fault. The court went on to further state therein that failure to strike the testimony that the investigating officer did not issue a traffic summons at the time was clearly error.

■■ The defendants argue that counsel for the plaintiffs made improper remarks in his final argument to the jury, primarily because the statement by plaintiffs' counsel that "[t]hey [Mr. Dietschweiler and plaintiffs' decedent] were ejected from the first place they went to after leaving Venard's" was not only improper and prejudicial as a statement regarding facts not in evidence, but, beyond that, the statement was contrary to the clear evidence in the case. This argument is without merit and contrary to the record. The witness Dietschweiler testified specifically, "I think we had a drink and we were told to get out of there. They didn't want us there  *  *  *." The record further discloses that Dietschweiler testified that they went to Lemont to another bar. Specifically he stated, "The first tavern we went to there, they told us to leave. They didn't want us coming in there." There was, therefore, no evidence whatsoever that any liquor was served to Dietschweiler or to Duda in the second tavern in Lemont. We fail to see how these remarks, based upon the evidence in the record, would prejudice defendants' theory that Dietschweiler became intoxicated at a dramshop other than the defendants'.

■■ The last argument of the defendants is that the award of $20,000 is excessive because the decedent was an unskilled laborer earning considerable less than that amount per year. Decedent's widow testified that the decedent (Duda) had earned the sum of $4300 during the year up to the time of his death on June 15, 1969. While not so stated by defendants, it would appear that their contention is that the award is excessive and should be based upon the earnings of a decedent in a dramshop action such as this for the calendar year. We find no such interpretation. In the dramshop action found in *Kiriluk v. Cohn* (1958), 16 Ill. App.2d 385, 393-94, 148 N.E.2d 607, 611, the jury awarded the sum of $10,000 to the surviving wife. The court held that the use of mortality tables as a basis for plaintiff's loss of support was not error and stated: "The testimony showed decedent's annual income was about $1,100, and the table showed a life expectancy of nearly eighteen years. Multiplying

these two factors would far exceed the verdict which was rendered." The decedent in the case before us was 23 years of age. The award is for the support of the widow and the minor children and is a statutory amount set forth by the legislature, and it is obvious that the sum of $20,000 is not excessive for an award to the widow and two minor children aged approximately 3 months and 15 months respectively at the time of the death of the father and husband. As a matter of public policy in this statutory proceedings, the limitation of the award is now the sum of $20,000 and under the facts of this case it is not excessive.

Judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.