CAROL CRUSE, Adm'r of the Estate of Angela M. Norder, Deceased, Plaintiff-Appellant, *v.* WILLIAM E. HINES, Defendant-Appellee.

Third District    No. 80-97

Opinion filed January 26, 1981.

Robert D. McKnelly and Leonard Sacks, both of Watseka, for appellant.

Robert W. Boyd, of Ackman, Marek, Boyd, Simutis & Bigott, Ltd., of Kankakee, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Carol Cruse, administrator of the estate of Angela M. Norder, appeals from the judgment entered against her, after a jury trial, in this wrongful death action against William E. Hines. The decedent Angela Norder was killed while riding in an automobile driven by William Hines. On appeal, the plaintiff raises numerous issues: (1) whether the court should have granted plaintiff a directed verdict or judgment *n.o.v.*; (2) whether the court erred in several evidentiary rulings; (3) whether the court erred in disallowing an amended complaint tendered by plaintiff at the close of her case; (4) whether there was improper comment both from the court and from defense counsel; and (5) whether the court erred in instructing the jury.

The facts as revealed in the record indicate that the decedent Angela Norder was killed on February 26, 1977, while on a date with the defendant William Hines. She was 17 at the time, and the two had been dating since 1975. They had talked of marriage, but no specific date had been set. On February 25, 1977, they planned to attend a concert in Normal, Illinois, and, afterwards, a party with some friends. On that day, William Hines attended his classes at Illinois State University until about 2 p.m. Then, he drove to Watseka, Illinois, to pick up the decedent, Angela Norder. Watseka is about an hour to an hour and a half drive from Normal, and Hines arrived there between 3 and 3:30 p.m., driving his 1970 Bonneville automobile. He picked Angela up at her place of work, and after she had changed clothes at her home, the two left Watseka to return to Normal. They left about 3:30 p.m. They arrived, back in Normal, around 5 p.m. They had supper at a restaurant and then attended a concert which began about 8 p.m. After the concert, which ended between 11 p.m. and midnight, they socialized with friends until around 1 a.m. They then left Normal, heading back to Watseka. The trip back was to be over Interstate 55 and State Route 24, a two-lane hard road. As they left for Watseka, Angela Norder put her head in the defendant's lap and fell asleep. About four miles east of Chatsworth, Illinois, or roughly 35 miles from Watseka, on Route 24, the Bonneville left the highway, ran up over a guardrail, proceeded along the guardrail a distance of 44 feet, then left the guardrail and hit a concrete abutment. After striking the abutment, the auto rolled over and came to rest upside down. Angela Norder received fatal injuries in the accident, and the defendant was also injured.

Carol Cruse, Angela Norder's mother, as administrator of the estate, brought the instant wrongful death action against William Hines, on behalf of herself, the decedent's father and the decedent's three siblings. The complaint alleged negligence on the part of Hines in failing to properly control the vehicle and in falling asleep while driving. Damages were sought for pecuniary loss by the next of kin and for necessary medical, hospital, and funeral expenses.

The State trooper who investigated the accident was plaintiff's first witness at the trial. He testified as to the conditions on the highway the night of the accident. Route 24 is a two-lane asphalt highway. That night the pavement was dry and the temperature was between 25 and 30 degrees Fahrenheit. At the location where the accident occurred, the road is flat and straight. There is a grass shoulder. The speed limit is 55 miles per hour. The State trooper testified that when he arrived at the scene the auto was upside down and had sustained extensive damage. The defendant Hines was standing by the highway, in shock, and the deceased Angela Norder was lying on her back near the auto. While the defendant appeared to be in a state of shock, he was coherent and did talk with the

officer. The trooper testified that he also talked with the defendant later that morning, at the hospital. There Hines told him that he did not recall what had happened. The trooper also made further investigation of the accident scene. He found tire marks (not skid marks) on the shoulder where the auto left the pavement. From that point it traveled about 30 feet before climbing the guardrail, where it left rubber tire marks for a distance of approximately 44 feet. After it left the guardrail, it hit the concrete abutment. The officer was asked if a citation was issued to defendant Hines. Without objection from plaintiff's counsel, the trooper answered that no citation was issued as a result of the accident.

The next witness to testify was the defendant William Hines, called as an adverse witness under section 60. He recounted the day's events leading up to the fateful ride back to Watseka in the early morning hours of February 26, 1977. He testified that he was driving at 55 miles per hour before the accident. The decedent was sleeping with her head resting in his lap, but that did not interfere with his driving at any time. Hines testified that he recalled being catapulted through the air, and woke up soon after that, finding the car upside down with its wheels spinning. He testified that he was not tired when he left Normal, nor during the drive. He also testified that, to his knowledge, the vehicle did not malfunction. He offered no explanation for the car leaving the road. His recollection of the events immediately preceding the accident was very limited. On examination by his own counsel, Hines was permitted to testify that he had suffered injuries requiring hospitalization as a result of the accident. The court overruled relevancy objections to the testimony on the grounds that his hospitalization was relevant to his inability to recall the accident. No specifics of his injuries were brought forth.

Plaintiff Carol Cruse, administrator of the estate of Angela Norder, was the next witness. She testified to the decedent's family, her background, and her contributions to the family. The evidence revealed that Angela Norder was very active in school and after-school activities and that she was very helpful and loving both at home and in the community. In his cross-examination of Mrs. Cruse, defense counsel inquired into Mrs. Cruse's divorce from Mr. Norder, and was permitted to establish, over counsel objection, that Mr. Norder had obtained the divorce and that Mrs. Cruse had married Mr. Cruse just one month after the divorce. Other persons, including the decedent's father and her employer, also testified to the exemplary character of the decedent. Evidence as to the medical, hospital, and funeral expenses was also brought forth, and the court took judicial notice of the relevant life expectancy pertinent to the case. The plaintiff then rested, and the defense moved for a directed verdict. The motion was denied. At that time, the plaintiff also moved to amend the complaint by adding a count II, seeking recovery under a *res ipsa loquitur*

theory. The defense objected, arguing that such amendment would inject new issues and require more and different preparation. The trial court denied plaintiff's motion to so amend.

The defense then proceeded with its case. William Hines testified that he and Angela Norder had been dating since 1975. He had given her a pre-engagement ring in 1976, which she wore until her death. He testified that they planned to be married in June 1977, after her graduation from high school. He recounted the events of the day on February 25, 1977. He testified that he did not remember the trooper visiting him at the hospital and did not remember being questioned. He also testified that he told the decedent's parents that he was sorry about the accident. On cross-examination, plaintiff's counsel asked the defendant if he remembered leaving the road at any time. The court sustained defense objection to this question, ruling that it was outside the scope of direct examination. The plaintiff's counsel then attempted to show that the defendant had indicated he remembered leaving the road, in a deposition prior to trial. Plaintiff's counsel argued that he should be able to test the defendant's memory, as part of the witness' impeachment. The court refused to allow the questions, stating that the proper time for such impeachment was when the plaintiff had called the defendant under section 60.

In rebuttal, the decedent's parents testified that they knew nothing of a planned marriage and also that the defendant had not told them he was sorry about the death of their daughter. They also testified that the pre-engagement ring had been returned on one occasion.

At the instructions conference, the plaintiff tendered the standard IPI instruction on circumstantial evidence. (IPI Civil No. 1.03 (2d ed. 1971).) The judge refused to give the instruction, stating that there was no circumstantial evidence in the case. The court also gave, over plaintiff's objection, an instruction on the rebuttable presumption that parents of a decedent sustained some pecuniary loss by reason of the death of a decedent.

The jury returned a verdict in favor of the defendant. Motions for a new trial and for judgment *n.o.v.* were denied.

■■ The first issue raised on appeal is whether the court erred in not directing a verdict for the plaintiff, and, subsequent thereto, not entering a judgment *n.o.v.* Well established is the rule that directed verdicts and judgments *n.o.v.* should be entered only where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The plaintiff argues that the evidence before the jury and the court indicated, as a matter of law, that the defendant was guilty of negligence and that the decedent was free from contributory negli-

gence. Both those issues are normally factual ones for the fact finder to determine.

Unexplained automobile accidents, wherein a plaintiff had no opportunity, because of the circumstances, to have or obtain knowledge about the accident's cause, have received a somewhat different treatment by the courts than ordinary negligence cases. In *Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 227 N.E.2d 758, the Illinois Supreme Court was faced with such a situation. The defendant's auto and the plaintiff's auto in that case were traveling in opposite directions on icy pavement. The defendant's auto went into a skid, crossed the center line and went into the oncoming lane, causing the collision. The defendant cited the icy pavement as the explanation for his skid into the wrong lane of traffic. The appellate court in that case reversed a jury verdict for the defendant, and remanded for a new trial on damages only. The supreme court affirmed the appellate court finding negligence as a matter of law. The court stated:

> "We do not think it was incumbent upon the plaintiff to show what caused defendant's car to skid to the wrong side of the road, or to prove other facts normally within the peculiar knowledge of the defendant. The car's presence there under the circumstances shown leaves room for no inference other than that defendant was going too fast, or braked or steered her car improperly, or caused the skidding through some other form of negligence." (37 Ill. 2d 596, 599.)

It further stated:

> "The fact that her car skidded in front of the one in which plaintiff was riding must be deemed to have arisen from some negligent act or omission, in the absence of explanation to the contrary." (37 Ill. 2d 596, 598. See *House v. Stocker* (1975), 34 Ill. App. 3d 740, 340 N.E.2d 563.)

Thus, the court in *Calvetti* placed the burden, of showing that the accident was caused by conditions and events other than defendant's own negligence, upon the defendant. This rule of shifting the burden of production was commented upon by the court in *Crosby v. Distler* (1976), 38 Ill. App. 3d 1058, 1060, 349 N.E.2d 448:

> "As counsel for the defendant has pointed out, where the plaintiff is struck by a vehicle being driven in the opposite direction when that vehicle comes into his lane, there is no other alternative but to shift the burden of proof to the defendant to prove a negative, *i.e.*, that he was not negligent. The reason for this rule requiring the defendant to establish that he was not negligent is based upon the fact that when a collision occurs in such a limited circumstance, the plaintiff has, generally, no knowledge of the defendant's conduct immediately preceding the collision."

The court, in *Crosby*, went on to conclude that the burden shift was not applicable in that case because the plaintiff therein was riding in the same car as the defendant and observed and had knowledge of the defendant's conduct prior to the accident. 38 Ill. App. 3d 1058, 1060-61.

■■ The circumstances and evidence in the instant case bring it within the rule established in *Calvetti*. It is quite true, as the defense points out, that we do not have two separate autos involved in this case, with the plaintiff in one and the defendant in another. However, and much more significantly, we do have the same underlying considerations which supported a shift of the burden of production. Here, there is evidence that the auto left the road, went onto the guardrail and into an abutment. The car was thus obviously in an area of the roadway where it should not have been. The pavement was dry and the roadway was straight. Plaintiff, administrator for the decedent, had no knowledge of the facts concerning the defendant's conduct preceding the accident. Defendant stated that the decedent was killed in the accident and had been asleep at the time it occurred. Thus, any facts concerning the accident would be within the peculiar knowledge of the defendant. Under the *Calvetti* rule, the presence of the defendant's auto off the roadway, in an improper area, raised the inference, under the circumstances shown, that the accident was the result of negligence on the part of the defendant. Therefore, it was incumbent upon the defendant to make a showing that something other than his negligence caused the accident. The defendant had the burden of producing evidence that something other than his negligence caused the accident. No such showing was made. Without that other evidence, the only inference is that the accident was the result of a negligent act or omission on the part of the defendant driver. Apart from the question of contributory negligence, which we shall cover later, the evidence would require a judgment *n.o.v.* to be entered for the plaintiff. No directed verdict would have been proper, however, for plaintiff's evidence only shifted the burden of production to the defendant. Had the defendant come forward with some evidence of a cause other than his own negligence, then he would have met his burden and the issue would properly have gone to the jury, with the ultimate burden of persuasion upon the plaintiff.

■■ Despite the above conclusion with respect to plaintiff's case, we find no error in the court's failure to enter a judgment *n.o.v.* The reason is that we find that a jury question was presented on the question of the decedent's contributory negligence. It has been established that sleeping in an auto is not, as a matter of law, either contributory negligence or freedom from contributory negligence. (*Smith v. Solfest* (1978), 65 Ill. App. 3d 779, 781, 382 N.E.2d 831.) Where there is evidence of circumstances existing from which a jury could conclude that a reasonably

prudent passenger would not have gone to sleep, then a question of fact is presented. (*Hayes v. Alsburg* (1978), 72 Ill. 2d 560, 382 N.E.2d 239.) In the *Alsburg* case, the court noted that the evidence indicated that traffic was heavy and that the defendant had been speeding. It concluded that the question of whether a passenger's sleeping was contributory negligence was a fact question for the jury. In *Smith v. Solfest* the evidence showed that the plaintiff knew the driver had been without sleep for almost a day and that the plaintiff insisted on the trip despite the defendant's plea that he was too tired. Under those circumstances, the question of sleeping as contributory negligence properly went to the jury. In the instant case, the evidence indicates that the defendant had done considerable driving in the afternoon of the day of the accident. The defendant and the decedent had spent the evening at a concert and then attended a social get-together after the concert. It was sometime around 1 a.m., in the early morning hours, and after their evening activities, when the two began their ride back to Watseka. Even without direct evidence that the decedent had reason to know that the defendant felt drowsy, we find such evidence as was presented gave rise to a jury question on the issue of contributory negligence on the part of the decedent in going to sleep. The evidence was sufficient to show a potential danger in such conduct, and the question properly went to the jury. Since we find the issue to have properly been submitted to the jury, we find no error in the court's refusal to enter a judgment *n.o.v.* for the plaintiff.

While the evidence is insufficient to support a judgment *n.o.v.* for the plaintiff, we do conclude that the cause will be reversed and remanded for a new trial because of an error in the instructions and errors on critical evidentiary rulings. The failure to give the standard IPI instruction on circumstantial evidence is clearly error in this case. It was also prejudicial to the plaintiff. The jury was informed that the plaintiff had the burden of showing negligence, but they were not informed that they could infer such negligence from the circumstantial evidence about the accident that was presented. The court stated that there was no circumstantial evidence and on that basis it denied giving the instruction. Yet, as was discussed previously, there was circumstantial evidence in the record properly to be considered, since the defendant had no knowledge as to what caused the vehicle to leave the road. The record did give rise to an inference that the defendant was negligent in the operation of his car. The plaintiff's entire case, given the circumstances of the accident, was based upon circumstantial evidence shown in the record. In the absence of evidence that it was not the defendant's negligence which caused the accident, the record shows circumstantial evidence of the defendant's negligence. The jury should have been so instructed, and it should also have been instructed on the permissible use of circumstantial evidence in reaching a verdict. The

failure to give the instruction requires a reversal and remandment for a new trial.

▪■■ That was not the only significant error that was potentially prejudicial to the plaintiff's case. Key evidentiary rulings also were error. The defense was permitted to present evidence that the defendant was injured in the accident under the guise that it was relevant to his lack of memory. Yet, all that was shown was the fact of his hospitalization. The injuries were not detailed nor were they tied in any manner to a lack of recollection. The defense also was permitted to establish that Mrs. Cruse, the plaintiff, had been the defendant in her divorce action and that she had remarried within a month of the divorce. These facts were of no relevance to the case and could only serve to possibly prejudice the jury against the plaintiff. Similar prejudice to the plaintiff occurred when the court refused to permit cross-examination of the defendant on the question of his lack of memory and recollection. This was a crucial issue at trial, as is evident in the record from comments by the court and counsel. The evidence indicated that the defendant informed the trooper that he did not recall the accident, and this fact was reinforced by the defendant's testimony at trial. As noted, the court even permitted evidence of his injuries in order to show a cause behind his lack of memory. Yet, despite the evidence in the record, plaintiff was not permitted to inquire into the defendant's memory of the accident. Clearly, as impeachment inquiry, such evidence was the proper subject for cross-examination, regardless of the scope of direct examination. The fact that the plaintiff had called the defendant as an adverse witness does not detract from the fact that the defense called him in its case in chief. Under the circumstances, inquiry into his credibility was permissible on cross-examination. The plaintiff was prejudiced by the court's rulings on these matters. Another area of prejudice, although unobjected to by plaintiff's counsel at the time, was the admission into evidence of the fact that no citation had been issued by the trooper who investigated the accident. Such inquiry, and its effect on the jury, have been criticized repeatedly (*Duda v. Haberman* (1975), 25 Ill. App. 3d 982, 323 N.E.2d 619), and had there been objection herein, this alone might be basis for reversal. We conclude that the evidentiary errors, viewed cumulatively and with the error in refusal of the circumstantial evidence instruction, severely prejudiced the plaintiff's case.

▪■ As to two other issues of some pertinence, despite our reversal, we find no error. There was no error in the court's refusal to permit an amendment of the complaint to put forward a *res ipsa loquitur* theory, nor was there error in the instruction to the jury on the rebuttability of the presumption of pecuniary loss to the parents. The decision on whether to allow the amendment was one for the discretion of the trial court. Here,

the plaintiff attempted to amend to assert a new theory of recovery after resting its case and immediately prior to the defendant's presentation. Given the timing of the motion to amend, we find no error in the court's refusal to permit such action. We do not find the instruction attacked unduly emphasized the rebuttability of the presumption of pecuniary loss, and we find no error in the giving of that instruction.

For the reasons outlined above, the decision of the Circuit Court of Iroquois County is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

STOUDER and HEIPLE, JJ., concur.