**Patricia D. BAUER, Independent Administrator of the Estate of Susan M. Pointer, deceased, Plaintiff–Appellant,**

v.

**J.B. HUNT TRANSPORT, INC., Defendant–Appellee.**

No. 97–2701.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1998.

Decided July 27, 1998.

Andrew Ward (argued), Berger & Berger, Evansville, IN, for Plaintiff–Appellant.

Joshua G. Vincent (argued), Hinshaw & Culbertson, Chicago, IL, Michael A. Lawder, Hinshaw & Culbertson, Belleville, IL, for Defendant–Appellee.

Before CUDAHY, EASTERBROOK, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Susan Pointer died on a stormy afternoon in May 1995, when a tractor-trailer driven by an employee of J.B. Hunt Transport veered from the right side of the road and rolled over on top of her vehicle. Patricia Bauer, the administrator of Pointer's estate, filed suit in diversity against J.B. Hunt, a Georgia corporation, charging it with negligence; a jury found in the defendant's favor. Bauer appeals, contending that the district court erroneously refused to instruct the jury that it was J.B. Hunt's burden to prove that the weather, as opposed to its own negligence, was the sole proximate cause of the collision and that the court improperly excluded expert testimony as to the factors that can cause a truck to roll over. We affirm.

## I.

At approximately 3:00 p.m. on May 18, 1995, Susan Pointer was driving her Ford Ranger pick-up truck northbound on Illinois Route 130, a two-lane highway, toward Albion, Illinois. A J.B. Hunt tractor trailer driven by Tom Cope approached from the opposite direction, traveling between 50 and 58 miles per hour (and possibly more slowly) on a downgrade. The weather was deteriorating: as a threatening storm cloud approached the road from the west, rain was already falling and the winds were increasing. Witnesses who were driving southbound behind the J.B. Hunt vehicle noted a line of trees on the west or right side of the road. One of those witnesses surmised that those trees acted as a windbreak; thus, where the tree line ended, the winds on the roadway suddenly became much more severe. Northbound drivers reported a steady deterioration of the weather as they approached the point where the collision occurred, becoming particularly bad within one-half mile of the site. The driver of the car behind Pointer testified that she had reduced the speed of her vehicle substantially below the limit of 55 miles-per-hour as the weather worsened and that Pointer was driving at a comparable or slower speed.

As the tractor-trailer passed the trees and traveled around a broad curve in the road-way, it began to tip over. The truck crossed from the right, southbound lane of traffic into the northbound lane, where it rolled over on its side on top of Pointer's vehicle and then slid down the embankment on the side of the road with Pointer's truck beneath it. The left front tire of the tractor-trailer left a skid mark that began in the southbound lane and terminated in the northbound lane; lug nuts on the same wheel of the truck also left a number of gouge marks in the northbound lane. Pointer lived briefly after the collision but died before medical personnel arrived at the scene. Cope, the J.B. Hunt driver, also died as a result of the collision.

After she was appointed the independent administrator of Pointer's estate, Bauer filed an action against J.B. Hunt asserting claims under the Illinois wrongful death and survival statutes on behalf of Pointer's mother, brother, and sister. *See* 740 ILCS 180/1 *et seq.*; 755 ILCS 5/27–6. The complaint alleged that the negligence of J.B. Hunt's agent had proximately caused Pointer's death.

At trial, J.B. Hunt argued primarily that the foul weather was responsible for the collision as an intervening cause. That theory was reflected in a number of the affirmative defenses that J.B. Hunt had pleaded in its answer, among them the first: "Defendant states that the loss or injury to the plaintiff's decedent occurred as a result of an Act of God which could not have been prevented by human care, skill or foresight." R. 4 at 2. Another defense alternatively attributed Pointer's death to an "act of nature." R. 4 at 3. Consistent with these defenses, J.B. Hunt originally proposed an instruction which would have advised the jury, in relevant part, as follows:

In this lawsuit, defendant, J.B. Hunt Transport, Inc., claims that this incident was the result of an Act of nature or Act of God, and *defendant has the burden of proving* the following two propositions:

First, [t]hat there was an Act of God or Act of nature which occurred;

Second, that plaintiff, Susan Pointer's, death was proximately caused by said Act of God or Act of nature.

R. 79, Def. Instr. No. 18 (emphasis supplied).

Near the close of the trial, however, during the jury instruction conference, J.B. Hunt's counsel withdrew the act of God instruction, explaining that "[t]he whole question of the act of God really goes right at the heart of proximate cause in the case, and ... you know, that's the plaintiff's burden." Tr. 384. Bauer's attorneys objected, insisting that J.B. Hunt bore the burden of proving that an act of God or nature had caused Pointer's death. They subsequently offered an instruction similar to the one the defense had withdrawn (R. 78, Pl.Instr.No. 34), but the district court declined to give it.[1] Instead, the court opted to deliver a slightly modified version of the pattern instruction for negligence actions in which the intervention of an "outside agency" may have been the sole or partial cause of the plaintiff's injuries:

> If you decide that the defendant was at fault and that its fault was a proximate cause of the death of the plaintiff's decedent, it is not a defense that something else may also have been a cause of the death.
>
> However, if you decide that the sole proximate cause of the death of the plaintiff's decedent was something other than the conduct of the defendant, then your verdict should be for the defendant.

R. 77, Def. Instr. No. 26D; Tr. 497–98; see ILLINOIS PATTERN JURY INSTRUCTIONS (CIVIL) § 12.05 (1995).

Neither the modified pattern instruction nor any other that the court gave suggested to the jury that J.B. Hunt bore the burden of proving that the weather was the sole proximate cause of Pointer's death; on the contrary, the instruction outlining the plaintiff's

theory of the case indicated that it was her burden to prove that "defendant J.B. Hunt Transport Inc.'s failure to exercise ordinary care was a proximate cause of [Pointer's] death." R. 77, Pl. Instr. No. 12 (revised); Tr. 502. Not surprisingly, then, in closing defense counsel made the following argument in response to Bauer's contention that the J.B. Hunt truck was traveling at an excessive rate of speed for the weather and road conditions:

> Well, I haven't heard any evidence to say that if the vehicle had been going any less than 55 miles an hour, if it had been slowed down going 40 miles an hour or 30 miles an hour, whether this truck wouldn't have gone over. There is no evidence of that. It's [the plaintiff's] burden to prove that. I don't have to disprove it. I don't have to prove that this wind at 10 miles an hour wouldn't have blown it over. At this point in time, you have no evidence to suggest otherwise. And quite frankly, given, you know, the testimony, I believe it's clear that that was an intense wind, and the fact that the truck was going 55 miles an hour versus 45 or 35 doesn't make any difference here. And certainly they haven't proved it.

Tr. 477.

The jury apparently agreed that the weather, rather than any negligence on J.B. Hunt's part, was responsible for the roll-over and Pointer's death. On the verdict form, the jury indicated that neither J.B. Hunt nor Pointer was at fault. R. 75.

## II.

### A. Jury Instruction

Bauer's first attack on the judgment centers on the district court's refusal to deliver a

---

**1.** The court reasoned that the act of God or nature defense was similar to the "unavoidable accident" defense, as to which the Illinois Supreme Court committee on civil jury instructions recommends that no instruction be given. Tr. 441; see ILLINOIS PATTERN JURY INSTRUCTIONS (CIVIL) § 12.03 (1995). The committee so recommends because the "unavoidable accident" instruction would be appropriate only where the evidence suggests that the plaintiff may have been injured solely by virtue of a freak occurrence not coupled with any negligence on the part of the defendant. See id. comment., quoting Williams v. Matlin, 328 Ill.App. 645, 66 N.E.2d 719, 721 (1946). In

such a situation, however, an "unavoidable accident" instruction " 'merely tells the jury what should be known to the man on the street' " (id., quoting Williams)—i.e., that the defendant cannot be held responsible for injuries that its own conduct did not cause. For that matter, the jury is routinely instructed in negligence cases that it should exonerate the defendant unless the plaintiff proves that the defendant was negligent and that its negligence proximately caused the complained-of injury. See id., quoting Williams. An additional instruction that simply states a variation on this theme is therefore unnecessary.

jury instruction on the act of God defense. Bauer argues that the withdrawal of the act of God instruction, coupled with the giving of the pattern instruction on proximate cause, left the jury with the purportedly mistaken impression that it was her burden to disprove the defendant's affirmative defense. Bauer emphasizes that once she succeeded in establishing a prima facie case of negligence, J.B. Hunt bore the burden of establishing that some circumstance other than the negligence of its driver was the sole cause of Pointer's injuries. Throughout the case, J.B. Hunt had posited, consistent with its act of God defense, that the weather was the real cause of the collision. But because J.B. Hunt was permitted to withdraw the act of God instruction, the jury was not instructed that the defendant bore the burden of proof on that defense. Thus, as Bauer sees things, J.B. Hunt had the benefit of the act of God defense but escaped the legal burden attending that defense.

■ Our review of the jury instructions is limited. *E.g., DePaepe v. General Motors Corp.,* 33 F.3d 737, 743 (7th Cir.1994). In evaluating the district court's exercise of discretion in instructing the jury, *see American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth.,* 125 F.3d 420, 434 (7th Cir.1997), we ask "whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Midcoast Aviation, Inc. v. General Elec. Credit Corp.,* 907 F.2d 732, 741 n. 7 (7th Cir.1990) (internal quotation marks and citations omitted); *accord United States v. Vitek Supply Corp.,* 144 F.3d 476, 487–88 (7th Cir.1998); *United States v. Dack,* 987 F.2d 1282, 1284 (7th Cir.1993); *Trustees of Indiana Univ. v. Aetna Cas. & Sur. Co.,* 920 F.2d 429, 437 (7th Cir.1990). "We reverse only if 'the jury's comprehension of the issues is so misguided that it prejudiced the complaining party.'" *Vitek,* 144 F.3d at 487–88, quoting *Dack,* 987 F.2d at 1284. Naturally, we look to Illinois law in this case to assess the substance of the jury instructions. *DePaepe,* 33 F.3d at 744.

■ The defendant, it is true, bears the burden of proof on any affirmative defense that it chooses to assert. *Pascal P. Paddock,*

*Inc. v. Glennon,* 32 Ill.2d 51, 203 N.E.2d 421, 423 (1964); *In re Marriage of Kramer,* 253 Ill.App.3d 923, 192 Ill.Dec. 653, 625 N.E.2d 808, 814 (1993); *Norman v. American Nat'l Fire Ins. Co.,* 198 Ill.App.3d 269, 144 Ill.Dec. 568, 555 N.E.2d 1087, 1100 (1990); *Rosenthal v. City of Crystal Lake,* 171 Ill.App.3d 428, 121 Ill.Dec. 869, 525 N.E.2d 1176, 1180 (1988). Of course, the defendant, like the plaintiff, is the master of its own case. A defendant is not compelled to pursue affirmative defenses; it may instead resist liability on the theory that the plaintiff cannot, or has not, carried her own burden of proof. Bauer makes no argument, nor could she, that this option was foreclosed to J.B. Hunt. And as we shall see, the withdrawal of the affirmative defense did not preclude J.B. Hunt from arguing that another agency—including the weather—was the sole proximate cause of the accident.

■ The Illinois Supreme Court's opinion in *Leonardi v. Loyola Univ. of Chicago,* 168 Ill.2d 83, 212 Ill.Dec. 968, 658 N.E.2d 450 (1995), makes clear that in a negligence action, the defendant is always free to argue that something other than its own negligence is wholly responsible for the plaintiff's injury, irrespective of whether it has pled that theory as an affirmative defense. In *Leonardi,* the estate of a deceased patient brought suit against the hospital and doctors that had treated her. One of the doctors subsequently died and his estate settled with the plaintiff shortly before trial. After a jury found in the remaining defendants' favor, the plaintiff appealed, arguing among other things that the trial court had erred in allowing them to argue that the conduct of the deceased physician was the sole proximate cause of the decedent's demise. In the plaintiff's view, the "sole proximate cause" theory was an affirmative defense that the defendants had failed to plead. The court firmly rejected that notion:

> In any negligence action, the plaintiff bears the burden of proving not only duty and breach of duty, but also that defendant proximately caused plaintiff's injury. The element of proximate cause is an element of the *plaintiff's* case. The defendant is not required to plead lack of proximate

cause as an affirmative defense. Obviously, if there is evidence that negates causation, a defendant should show it. However, in granting the defendant the privilege of going forward, also called the burden of production, the law in no way shifts to the defendant the burden of proof.

Based on these principles, we agree with the appellate court that an answer which denies that an injury was the result of or caused by the defendant's conduct is sufficient to permit the defendant in support of his position to present evidence that the injury was the result of another cause and so hold.

658 N.E.2d at 455 (citations and internal quotation marks omitted) (emphasis in original). *See also Banks v. Climaco,* 283 Ill. App.3d 842, 218 Ill.Dec. 817, 669 N.E.2d 1343, 1348–49 (1996).

█ *Leonardi* effectively extinguishes Bauer's argument. J.B. Hunt has at all times contended that its negligence, if any, did not cause the collision; and because proximate cause was an element of Bauer's case, the trucking company was not obliged to pursue that theory by way of an affirmative defense. Consequently, the withdrawal of the act of God affirmative defense did not preclude the company from suggesting that the weather was the true and exclusive cause of the accident. Nor did the district court's refusal to give an instruction allocating to J.B. Hunt the burden of proving that the weather was the sole proximate cause of the collision prejudice Bauer. *Leonardi* leaves no doubt that it is the plaintiff, not the defendant, that bears the burden of proving that the defendant's negligence was at least *a* proximate cause of the complained-of injury.

█ The fact that the collision in this case occurred on the decedent's side of the road does not alter the outcome of this analysis. Illinois law is replete with cases indicating that where an accident occurs because the defendant was driving on the wrong side of

the road or left the roadway, a prima facie case of negligence has been established and the defendant is required to adduce evidence that some circumstance other than his own negligence was responsible for his vehicle straying from the right side of the road. *Osborne v. O'Brien,* 114 Ill.2d 35, 101 Ill.Dec. 867, 499 N.E.2d 455, 458 (1986); *Calvetti v. Seipp,* 37 Ill.2d 596, 227 N.E.2d 758, 760 (1967); *Sughero v. Jewel Tea Co.,* 37 Ill.2d 240, 226 N.E.2d 28, 29 (1967); *Smith v. Tri–R Vending,* 249 Ill.App.3d 654, 188 Ill.Dec. 808, 619 N.E.2d 172, 177 (1993); *Reid v. Sledge,* 224 Ill.App.3d 817, 167 Ill.Dec. 541, 587 N.E.2d 1156, 1159 (1992); *Grote v. Estate of Franklin,* 214 Ill.App.3d 261, 157 Ill.Dec. 942, 573 N.E.2d 360, 366 (1991); *Kyrouac v. Brockman,* 120 Ill.App.3d 249, 75 Ill.Dec. 632, 457 N.E.2d 1074, 1076 (1983); *Cruse v. Hines,* 92 Ill.App.3d 884, 48 Ill.Dec. 437, 416 N.E.2d 710, 715 (1981). A few older cases go so far as to suggest that the burden of *persuasion* shifts to the defendant in this circumstance. *Crosby v. Distler,* 38 Ill. App.3d 1058, 349 N.E.2d 448, 450 (1976); *Murphy v. Kumler,* 344 Ill.App. 287, 100 N.E.2d 660, 663 (1951).[2] More recent cases, however, consistently describe the defendant's burden as one of *production* only. *See, e.g., Osborne,* 101 Ill.Dec. 867, 499 N.E.2d at 458 (describing the defendant's obligation as one "to adduce evidence"); *Smith,* 188 Ill.Dec. 808, 619 N.E.2d at 177 (explaining that the kind of rebuttable presumption raised by evidence that defendant left the roadway or was driving on the wrong side of the road "establishes a *prima facie* case as to the issue involved and shifts the burden of producing evidence but not the ultimate burden of persuasion"); *Cruse,* 48 Ill.Dec. 437, 416 N.E.2d at 714 (observing that the rule of *Calvetti* "only shifted the burden of production," with "the ultimate burden of persuasion [remaining] upon the plaintiff"). And *Leonardi,* of course, leaves no doubt that the burden of persuasion as to

---

**2.** Our own opinion in *Morehead v. Poland,* 457 F.2d 694 (7th Cir.1972), quotes the Illinois Appellate Court's opinion in *Murphy* for the proposition that where the defendant's car was on the wrong side of the road at the time of the collision, " 'certainly it is the duty of the defendant to

show that he was in that situation because of some particular reason other than his own negligence.' " *Id.* at 695, quoting 100 N.E.2d at 663 (emphasis ours). *Morehead* does not otherwise suggest that the defendant's burden is one of persuasion, rather than production, however.

causation at all times remains with the plaintiff. 212 Ill.Dec. 968, 658 N.E.2d at 455.

There can be no doubt that J.B. Hunt, in compliance with these precedents, adduced evidence tending to show that something other than the negligence of its driver—the weather—was responsible for its truck moving from the right side of the road and into the path of Pointer's vehicle. Multiple witnesses testified as to the severity of the weather, and in particular to the sudden surge of winds confronting southbound drivers as they emerged from the protective windbreak of the tree line and entered the curve where the collision occurred. *E.g.* Tr. 149, 160–61, 209, 347. That evidence was sufficient to satisfy the burden of production and create a jury question as to whether J.B. Hunt's negligence, if any, was the cause of Pointer's death. *See Osborne,* 101 Ill.Dec. 867, 499 N.E.2d at 458. Because Illinois law so clearly places the burden of *persuasion* on this point to the plaintiff, Bauer was not entitled to an instruction re-allocating that burden to Hunt. The instructions, as given, correctly conveyed the substantive provisions of Illinois law to the jury.

### B.  Exclusion of Expert Testimony

■  Bauer also argues that the district court erred when it barred her proffered expert, Aric Steven Frazier, an associate professor of law enforcement at Vincennes University, from giving testimony on her behalf. We review the district court's decision solely for abuse of discretion. *General Elec. Co. v. Joiner,* —— U.S. ——, ——, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997).

■  The court did not abuse its discretion in excluding Frazier's testimony. Bauer's attorneys represented to the district judge at trial that Frazier's testimony was offered not to present an opinion as to the cause of the collision, but to articulate for the jury the factors that can contribute to a tractor-trailer tipping over as it did in this case. Tr. 227, 230.[3] The district court excluded Frazier's testimony principally because it did not believe that the testimony would be helpful to the jury. *See* Tr. 226, 311. Having reviewed Bauer's offer of proof as well as Frazier's affidavit, we find nothing improper in that assessment. Assuming that Frazier was qualified to give expert testimony as to the factors that can cause a tractor-trailer rig to tip over,[4] we find little or nothing in either his affidavit or his testimony at the proffer that would have permitted the jury to determine whether and to what extent these factors came into play in the collision with Pointer's vehicle. Frazier identified the speed and center of gravity of the vehicle as "probably the biggest factor[s] in a rollover," for example. Tr. 306–07. Yet, nothing in the record discloses a basis from which the jury could have ascertained at what speed the driver of the J.B. Hunt rig would have risked a rollover given the vehicle's center of gravity (which the record does not reveal), the curvature and incline of the roadway, and the weather. Bauer herself argues that the factors which contribute to rollovers "are clearly not matters within the average juror's comprehension." Bauer Br. at 25; *see also* Reply Br. at 12. Without a framework in which to evaluate them, the jury could only have speculated as to the causal relationship between the factors that Frazier identified and the events at issue in this case.

### III.

Because we find no error in the refusal to instruct the jury on the defendant's act of God defense or in the exclusion of the plain-

---

3.  Bauer originally designated Frazier as an expert witness with the intent that he offer an opinion as to the cause or causes of the accident. *See* R. 31 Ex. 16 ¶ 4. Apparently at a pretrial conference, however, the district court indicated to the parties off the record that it would not permit opinion testimony in this vein. *See* Tr. at 223, 226, 300–01. Bauer does not challenge the propriety of the district court's ruling in this respect.

4.  Bauer complains that the district court never made a finding as to whether Frazier qualified as an expert witness. The record suggests to us, however, that the district court assumed without deciding that Frazier qualified as an expert (*see* Tr. 226) and excluded his testimony on the alternate basis that it would not assist the jury in deciding the case (*e.g.,* Tr. 311).

tiff's expert witness, we AFFIRM the judgment below.